Emil CROVEDI, Petitioner-Appellant,

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

**Frank DeLEGGE, Sr.,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

**James SPOON, Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

**Nos. 73–1690, 74–1314 and 74–1207.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1974.

Decided May 20, 1975.

**542**

Elizabeth P. Mulford, Palo Alto, Cal., for petitioner-appellant in No. 73–1690.

James R. Thompson, U. S. Atty., Gary L. Starkman and Donald G. Newman, Asst. U. S. Attys., Chicago, Ill., for respondent-appellee in No. 73–1690.

Frank DeLegge, Sr., pro se.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for respondent-appellee in No. 74–1314.

James Spoon, pro se.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for respondent-appellee in No. 74–1207.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

The principal issue raised by these three appeals is founded on United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and basically is that sentences were enhanced by consideration of prior unconstitutionally obtained convictions. The enhancing of sentence doctrine had been enunciated in Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), although that case involved a conviction based on a tainted prior conviction. Enhancement of sentence was directly involved as an issue in *Tucker* and upon the facts before it the court remanded for reconsideration of the sentence. The underlying rationale was not particularly new; thus, for example, in Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), a conviction was reversed because the "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue."

A principal theme in post-*Tucker* cases is that the prior convictions were obtained in situations in which the defendant was not represented by counsel in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

I

As background for the consideration of the individual appeals here involved we note some of the various applications of the *Tucker*-based enhancement principle since the issuance of that opinion.[1]

United States v. Lufman, 457 F.2d 165 (7th Cir. 1972), a felon-firearms case, 18 U.S.C. App. § 1202(a), did not involve an enhancement of sentence but since the pyramiding aspect of *Burgett*, crystalized by *Tucker*, appears in some circuits to march arm in arm with the impact of a tainted conviction on obtaining a later conviction, we do note the refutation in *Lufman* of the Government's contention that the defendant should have attacked his conviction by a writ of *coram nobis* prior to indictment in the present case. "[S]uch a [constitutionally invalid] conviction is infirm from its incipiency." *Id.* at 168 n. 3. Further, a significant principle in this type of case, again laid down in a footnote, is the refutation of the Government's claim that since the docket entries of the prior conviction were silent as to whether the defendant was represented by counsel, although defendant submitted an affidavit stating that he was not and was not advised that he had a right to counsel, he should be held to strict proof and should carry the burden of that proof. "This is incorrect. Once a defendant raises the constitutional invalidity of a prior conviction, the government has the heavy burden of proving absence of constitutional defect or waiver of rights. .. . . When the record of a prior conviction is silent as to the presence of counsel, it is presumed that the Sixth Amendment rights of the defendant have been violated. The government must affirmatively prove otherwise. . . . As the Court in *Burgett* added, 'Presuming waiver of counsel from a silent record is impermissible.' " (Citations omitted.) *Id.* at 167 n. 2. *Accord*, Woods v. United States, 457 F.2d 185 (7th Cir. 1972).

United States v. Janiec, 464 F.2d 126 (3d Cir. 1972), goes beyond the factual situation of *Tucker* in which the misinformation was of constitutional magnitude and was given specific consideration

---

1. We also note the pre-*Tucker* case in this court, United States v. Martinez, 413 F.2d 61 (7th Cir. 1969), in which this court declined to differentiate between the situation in which the absence of counsel in the prior conviction is manifest on the face of the record and that in which the invalidity is latent. The defendant claimed that his prior conviction was based upon an involuntary plea. The court, holding that the district court has the power to conduct a hearing to ascertain the constitutional validity of a prior conviction which the Government attempts to introduce for the purpose of enhancing punishment of the defendant as a second offender, remanded for a hearing to determine the validity of the defendant's prior conviction.

by the sentencing judge to that in which there is only a possibility that the sentencing judge based the sentence on misinformation of constitutional magnitude, the possibility existing because the judge had chosen not to disclose the defendant's list of prior convictions which was before him. In such a situation, according to the opinion, a balancing test should be utilized. In the case before it under the circumstances outlined above, the Third Circuit remanded for resentencing inasmuch as the sentencing court did not state that prior convictions played no part in its decision and it was therefore impossible for the defendant to guard against a sentence founded at least in part upon misinformation of a constitutional magnitude. *Id.* at 132. It is also to be noted that the *Janiec* court reached the same result this court did in United States v. Miller, 495 F.2d 362 (7th Cir. 1974), that while the entire presentence report need not be made available to the defendant, with discretion being exercised on a case by case basis, if a judge "hereafter" regards any information as sufficiently important to affect the sentence the substance should be made available to the defendant or his counsel. In *Janiec*, this result was related specifically to the prior conviction record.

In Rogers v. United States, 466 F.2d 513 (5th Cir. 1972), cert. denied, 409 U.S. 1046, 93 S.Ct. 546, 34 L.Ed.2d 498, the record[2] failed to disclose that the sentencing judge gave explicit consideration to the prior conviction. In denying relief, the district court specifically certified that the sentence was not enhanced by the existence of the prior conviction. The Fifth Circuit affirmed since the present sentence was not founded upon a prior invalid conviction. In a footnote, the court also found it significant that two co-defendants, who presumably made no claim of enhancement, had received identical sentences.

The same circuit had in Lipscomb v. Clark, 468 F.2d 1321 (5th Cir. 1972), a situation in which the district court had not had an opportunity to pass upon the *Tucker* claim that three prior convictions were unconstitutionally counselless but in which the claim was based only upon *Lipscomb's* assertions rather than, as in *Tucker*, upon a full adjudication of unconstitutionality of the prior convictions in the state courts. The court held this differentiation of no significance and remanded for further consideration under the following guidelines. The district court should review the records involved in the conviction claimed to have been enhanced and in so doing should assume the prior convictions to be invalid. The district court without regard to these convictions should determine whether the sentence given in the present conviction was appropriate. If so an order should be entered to that effect. If, however, without regard to the prior convictions, the sentence given would have been inappropriate, then a hearing should be held to allow the defendant to present evidence on his claim that the prior convictions were unconstitutional under *Gideon.* If the district court is convinced of the validity of the claim after such a hearing, then resentencing should follow.

In McAnulty v. United States, 469 F.2d 254 (8th Cir. 1972), cert. denied, 411 U.S. 949, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973), the judge before whom the § 2255 petition was filed had also been the sentencing judge. In denying the petition, which asserted that the sentencing judge had given explicit consideration to three prior felony convictions which rested upon uncounselled guilty pleas, the sentencing judge expressly stated that he "was and still is of the opinion that regardless of any invalidity or absence of previous convictions," the sentence given was appropriate. The Eighth Circuit in affirming denial of relief distinguished *Tucker* where a remand had occurred despite the claim that it would be pointless, indicating that in view of the express statement of

---

**2.** It is not clear whether the reference is to the record of the sentencing or to the § 2255 proceedings.

the sentencing judge remand in *McAnulty* would indeed be pointless.

Mitchell v. United States, 482 F.2d 289 (5th Cir. 1973), confirmed that which was implicit in *Lipscomb, supra,* namely that the defendant in the *Tucker* situation need neither exhaust state remedies by returning to the state where the challenged conviction occurred nor return to the federal court in the state where convicted and bring a § 2255 attack. In addition, the court held that it is not necessary in order to prevail to show that the consideration of the prior invalid sentences enhanced the present sentence but only that there was consideration thereof. The fact that the defendant at the time of sentencing had admitted the correctness of the prior convictions was held to be just that and not to be an admission of guilt on those occasions nor a waiver of right to attack their constitutional validity. The court also addressed itself at some length to the question of burden of proof, holding on the principal issue that when a convicted defendant attacks collaterally prior convictions on the *Gideon* ground, and was indigent at the time of the prior convictions, and the record shows that he was not represented by counsel, or the record is silent on the matter, then the party defending the prior convictions has the burden of proving that the defendant was represented by counsel or that he waived his right to counsel.[3]

In Brown v. United States, 483 F.2d 116 (4th Cir. 1973), the court while remanding for further proceedings and while approving generally the guidelines laid down in *Lipscomb, supra,* did reach a significantly different result at the point at which a district court has determined that there was no counsel in prior convictions in state cases, at least those in states other than the one in which the federal court was sitting. Drawing a distinction between the recidivist type of situation, where the proof of the prior conviction was an essential element in the proof of the present crime, the court took the position that in the § 2255 case the prior convictions should first be attacked in the court where they occurred. *Mitchell, supra,* which reached the opposite conclusion on exhaustion, although reported in an earlier volume of the Federal Reporter, was actually filed subsequent to *Brown.* The court in *Mitchell* in part relied upon *Martinez, supra,* note 1, although that case did involve the second offender, rather than the present enhancement situation. *Mitchell* was a § 2255 proceedings. Judge Craven dissented in *Brown* arguing that the comparison between the recidivist and the § 2255 situations was a distinction without a difference. If the majority opinion in *Brown* on this point is correct it might appear that references to "convictions void under *Gideon*" should be rephrased to "convictions voidable under *Gideon.*"

The Tenth Circuit without extended discussion in United States v. Green, 483 F.2d 469, 470–71 (10th Cir. 1973), cert. denied, 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477, found the *Tucker* claim without merit where the sentencing judge had disavowed any reliance upon the prior conviction.

Likewise in Young v. United States, 485 F.2d 292 (8th Cir. 1973), cert. denied, 416 U.S. 971, 94 S.Ct. 1995, 40 L.Ed.2d 560 (1974), the court, in affirming a dismissal of a § 2255 motion, held that a remand would be fruitless because the motion had come before the sentencing judge who had stated explicitly that the court "did not in any way consider the validity of any past sentence as a factor in imposing the sentence finally imposed in this case." The court, however, did not rely wholly on this disclaimer but found independent support for lack of reliance and further that there was reason for belief that the prior convictions were not void in any event. While further buttressing for the court's decision would appear not to have been needed,

---

**3.** But see the court's discussion of the point not frequently raised where the status of indigency at the time of the prior convictions is challenged, in which case the party collaterally attacking the convictions has the burden of proving indigency. 482 F.2d at 294–95.

the court nevertheless did express itself in agreement with *Brown* that the exhaustion requirement in the § 2255 type of case, itself a collateral attack, should not be "a nullity." *Id.* at 294.

Because of the overuse of a magistrate in the decisional process, the First Circuit reversed the dismissal of a § 2255 motion in the present area of discussion, O'Shea v. United States, 491 F.2d 774 (1st Cir. 1974), however, in so doing the court gave consideration to two aspects bearing directly on the *Tucker* type of case: (a) the contention of the Government that misdemeanor convictions were too insignificant to cause reversal was rejected in light of the sentencing judge's specific reference to the seriousness of the petitioner's record and (b) the determination of whether the case on remand should go to the sentencing judge or another judge was resolved in favor of the sentencing judge by the application of a balancing process. With regard to the first matter it would appear reasonable to determine whether the sentencing judge gave serious consideration to prior crimes irrespective of their magnitude. As to the second matter, the court arrived at its conclusion in a well-reasoned analysis of the pro and con aspects of the issue.

The Ninth Circuit affirmed the dismissal without an evidentiary hearing of a § 2255 petition in what would appear to be a loosening of the standard for determining whether the sentencing judge had given consideration to prior sentencing. Dukes v. United States, 492 F.2d 1187 (9th Cir. 1974). The trial judge had commented: "The sentence in this case of 25 years was imposed because the court considered this man a menace to society. Little thought was given to the FBI report because it was read to the court in such a way that it was, at least in part, unintelligible." The brief per curiam opinion does not explore the possibility that the characterization of the defendant as a menace to society may have been based in part on the intelligible portion of the FBI

record or whether that portion set forth constitutionally infirm convictions.

Although *Tucker* has precipitated other § 2255 and habeas cases, the above cases establish sufficient guidelines for our consideration of the three cases now before us.

## II

■ Before turning to the individual facts of the cases before us, we will not require in any of the cases that there have been an effort at exhaustion, i.e., an attack in the court of prior conviction. While recognizing conceptual differences between the recidivist type of situation in which the existence of prior crimes is a part of the Government burden of proof and the collateral attack aspects involved where it is claimed that an enhancement of sentence has resulted from consideration of an unconstitutional prior conviction or convictions, the differences are of insufficient magnitude for us to repudiate this court's holding in *Lufman* that we are here dealing with a conviction which, if unconstitutionally obtained, is infirm from its incipiency. As in *Martinez*, the district court before whom the case is pending may properly conduct a hearing, if that point is reached, to determine the constitutional validity of the prior conviction. Further, unless the record is clear that consideration of any prior conviction, now claimed to be invalid, did not, or would not, enhance the present sentence, it is necessary that the district court, preferably the sentencing judge, shall follow the procedure outlined in *Lipscomb, supra.*

## A

■ In the appeal of Emil Crovedi, No. 73-1690, the § 2255 petition was dismissed by the sentencing judge. That judge gave consideration to the petition in the light of *Tucker* and while not precluding in his memorandum opinion that the conviction record may have been a part of the "surrounding circumstances" entering into the determination of "what action is appropriate and to

what extent punishment should be imposed," the judge was of the opinion that "the sentence imposed upon the petitioner was entirely appropriate . . regardless of the invalidity or absence of convictions noted in the presentence report." In *Tucker*, over a vigorous dissent, the Court remanded the case for reconsideration of the respondent's sentence on the basis that the judge should look at the situation with the knowledge that the prior sentences were invalid. In the case before us, the district court in effect was in the same position as the judge in *Tucker* following remand. Applying the *Tucker* principle and upon the assumption that the prior convictions were to be disregarded, the judge found the sentence appropriate, citing *McAnulty, supra*. A remand for reconsideration could accomplish no more than that which has already occurred. The prisoner's sentence in view of the district judge's pronouncement does not stand in any sense "on the basis of assumptions concerning his criminal record which were materially untrue." *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). We decline to find persuasive Crovedi's assertions that the district court judge entertained animosity toward him because of the reversal of a prior conviction.[4] The record does not support such a claim.

## B

In the appeal of Frank DeLegge, Sr., No. 74–1314, the § 2255 petition sought to vitiate two fifteen year concurrent sentences imposed in 1968 and 1969. The § 2255 petition was filed before the sentencing judge in the first of these cases. The judge in the other, Judge Napoli, was deceased at the time of the § 2255 filing.

The petition made it clear that reliance was being placed upon *Tucker*. The petition set forth that the misinformation contained in the prosecutors' reports "and other reports that was given specific consideration by the trial courts in fixing the sentences" was as follows:

"(1) That the prosecutors report and that the police files and other reports contained a prior conviction that was unconstitutionally obtained in violation of petitioners constitutional right to be represented by counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

"(2) On or about June 1934. The petitioner was tried in a criminal court of Cook County, and convicted for the offense of Petty Larceny, that petitioner was not represented by counsel; that petitioner was not advised of his right to counsel, or furnished counsel by the trial court; that due to petitioner's poverty he was unable to obtain counsel to represent him at the trial, the petitioner did not knowingly or intelligently waive his right to counsel."

The petitioner having raised the constitutional defect and the record before the district judge being silent as to the correctness of the assertion of a counselless conviction we will assume, as should have the district court, in accordance with the authorities hereinbefore set out, that the conviction of petit larceny some 34 years prior to the sentencing in question was constitutionally infirm. This posture of the case would appear to raise at least a prima facie basis for reversal for the purpose of following the procedure set forth in *Lipscomb, supra*. While it would seem to approach the ridiculous to believe that a federal judge would make the sentence more severe in cases involving convictions of bank robbery in violation of 18 U.S.C. § 2113(a) and of a Hobbs Act robbery conspiracy charged under 18 U.S.C. § 1951 because of an ancient conviction of a minor crime, the denial of the § 2255 petition throws no light whatsoever on the situa-

4. United States v. Varelli, 407 F.2d 735 (7th Cir. 1969).

**548**

tion.[5] We recognize, of course, that the denying judge could not speak for Judge Napoli, however, he had been the sentencing judge in the other case.

Before remanding the case for reconsideration of the sentences we turn to the transcript of the two sentencings. The petitioner's brief candidly admits that "the transcript of the sentencing proceeding in Petitioner's trials reveals no express reliance on Petitioner's former and constitutionally invalid convictions."[6] Our examination then must be to discern whether there is any reasonable basis for a belief that in sentencing, either trial judge gave consideration to the petit larceny conviction. We conclude they did not.

In the bank robbery case, DeLegge was convicted along with four co-defendants. The judge indicated that he would proceed immediately with sentencing. DeLegge's counsel asserted that DeLegge had never been convicted of a crime but had been gainfully employed, and that still others involved who had previously been convicted and sentenced to 15 years had prior records and were the people most involved in this bank robbery. Subsequently, the prosecuting attorney after referring to felony convictions of one of the co-defendants, advised the court that DeLegge had "served four months in the house of correction in 1935, a long time ago, for petty larceny." The prosecution also mentioned DeLegge's involvement in other present criminal proceedings and that he was out on bond in three other cases. Later, upon objection by one of the co-defendants to some of the prosecutor's statements, the judge stated the following:

"I give you my assurance that I impose sentences here, Mr. Callaghan, based on the evidence which I heard and which evidence the jury believed by their verdicts.

"I am mindful of the fact that some of the statements of the United States Attorney might be described as hearsay. I don't think it is necessary to pay any attention to those statements to deal properly with the subject of punishment in this case."

The United States Attorney then recommended that since the maximum penalty of the crime for which DeLegge was convicted was 20 years, "it would be the government's position that the maximum penalty should be 10 and not the 12 and a half." Upon DeLegge's motion for release on bond, the court replied in denying the motion, "I don't know what went on in every other case. I must treat the disposition of this case based on the evidence here." Near the end of the sentencing procedure, the judge did state that "[i]f there are any record convictions of felonies in any case, let those convictions be included in the findings." The only felony convictions referred to by the United States Attorney were those of a co-defendant of DeLegge. The sentence actually imposed, of course, was identical with that which had in an earlier trial been imposed on four others involved in the same robbery.

In the later Hobbs Act case which came before Judge Napoli there was no mention of the petit larceny conviction. DeLegge's counsel asked that any sentence imposed be concurrent with the sentence imposed in the bank robbery case. The United States Attorney opposed the concurrent sentence and asked that it be consecutive to the 15 years previously imposed. He also stated to the judge that "[p]rior to his conviction before Judge Hoffman, as I understand it, he had no prior felony convictions," but that he was presently under other

---

**5.** "Motion of petitioner Frank DeLegge, for an Order vacating his sentence pursuant to 28 U.S.C. Section 2255 is denied."

**6.** While using the plural "convictions" the petition refers only to the petit larceny convic-

tion. We do note that the language in the pro se brief including the plural "convictions" is verbatim to that employed in the earlier filed brief in the Crovedi case.

indictments. He asked not only that the sentence be consecutive but also that the maximum sentence of 20 years be imposed. Nevertheless, the sentence imposed by Judge Napoli was 15 years to be served concurrently with the sentence he was now serving.

█ Under these circumstances, we do not deem reconsideration of sentencing to be warranted.

### C

The § 2255 petition in the appeal of James Spoon, No. 74–1207, raises several issues in addition to the *Tucker* question, one of which, as indicated hereinafter, we deem of sufficient significance to require further trial court attention.

In a five count indictment Spoon was charged with violations of 18 U.S.C. §§ 2314 and 2 in that he transported and caused to be transported from Iowa to Illinois falsely made and forged securities, bank checks, with requisite knowledge. Counts I and II were dismissed by the Government. All counts charged the offense as occurring the same day. Apparently, and the record on this appeal does not include a transcript of the trial evidence,[7] the checks were cashed at stores in the area of Rock Island, Illinois. They supposedly were to be honored at a bank in Bettendorf, Iowa, just across the Mississippi River from Rock Island. The transportation is charged as having been *from* Bettendorf in all three Counts but *to* Rock Island in Counts III and IV and to Milan, Illinois, which we note is adjacent to Rock Island, in Count V.

On the *Tucker* issue, which was clearly presented to the district court by appropriate citation and argument, Spoon

claims that his convictions in 1960 in San Antonio, Texas involved a guilty plea without representation by counsel. Here the record of the sentencing is of no help to the Government's position. Our reading of the record indicates that the Texas convictions were in federal court and apparently actually only involved one conviction arising out of a fraudulent paper transaction or several such transactions. In sentencing, the district court indicated that it appeared that whenever Spoon was not in custody he was "hanging fraudulent paper some place."

It would appear that there were two prior convictions arising out of such transactions, one being that in Texas in 1960 and the second in state court in Tennessee in 1971, shortly after his release from the federal incarceration. The federal sentence had been for seven years but it took Spoon because of parole violations 11 years to complete this sentence,[8] a fact which apparently made a substantial impression upon the district court. The question of whether there was counsel in the Texas case was never reached.

█ It is obvious from the district court's decision in dismissing the § 2255 petition that substantial consideration was given to Spoon's inability to discontinue "hanging fraudulent paper some place" whenever he was at large. Spoon candidly admitted that to an extent this was true but attributed it to the influence of alcohol. Nevertheless, in the language of *Tucker*, the real question here is not whether the result in Texas would have been different if Spoon had had counsel in Texas, and we must assume in the present posture that he did not, but rather whether the sentence in

---

7. The transcript, of course, was before this court in Spoon's direct appeal. The conviction was affirmed by an unpublished order on November 20, 1973. The only issue raised on direct appeal was that of delay in trial proceedings.

8. Because the record does not reveal the nature of the parole violations we will not attempt to resolve a problem of some perplexity which might be inherent in this situation and

as to which we are unaware of any authority. That problem would arise if the parole violations also involved passing fraudulent paper and the sentence being served arose out of a void counselless conviction. Would the voidness carry over to the parole violation or would the sentencing judge be precluded in any event in considering the facts showing that there had been other instances of this type?

the case under review would have been different if the sentencing judge had known that the 1960 prior conviction had been unconstitutionally obtained. 404 U.S. at 448, 92 S.Ct. 589. We can only speculate and therefore must remand for reconsideration of the sentence.

The only other issue raised by Spoon which we consider to have enough merit to warrant further consideration on remand is his claim that all three Counts involved only one crossing of a state line. We are unable to tell from the record at this time whether the proof was (as charged in the indictment) that Spoon did take the bad paper from Iowa to Illinois or whether the proof concerned the movement of the checks from the grocery stores in Illinois through banking channels to Iowa. Also since the documents were not good, there presumably was a return interstate trip to the grocery stores. If the situation was the former one since the same date was charged in each Count, unless Spoon had spent his day going back and forth across the river it would appear that there was only one transportation. If the proof was of the banking channels variety then other problems are presented. See United States v. Dilts, 501 F.2d 531 (7th Cir. 1974); Gilinsky v. United States, 335 F.2d 914 (9th Cir. 1964); Gilinsky v. United States (second appeal) 368 F.2d 487 (9th Cir. 1966); King v. United States, 372 F.2d 946 (10th Cir. 1967).

Because of the lack of clarity on the factual issue, and the inability of Spoon to offer any proof on the subject by virtue of the dismissal without an evidentiary hearing, we can go no further at this time than to observe it appears clear that if there was but one transportation there would be only one offense under 18 U.S.C. § 2314 irrespective of the number of documents being transported. Castle v. United States, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961).

An allied question here is in the fact that the two sentences on Counts III and IV were to be served concurrently with five years probation being imposed on Count V, which probationary period was to commence at the completion of the sentences. At one time the two sentences to be served would have eliminated the necessity of vacating either by virtue of their being concurrent. In this Circuit, at least because of the possibility of undesirable collateral consequences attendant upon more than one conviction, the so-called concurrent sentence doctrine would not be applicable. United States v. Tanner, 471 F.2d 128, 140 (7th Cir. 1972), cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220.

For the reasons hereinbefore set out, No. 74–1207 is reversed and remanded for further proceedings in accordance with this opinion. As we have indicated elsewhere we deem the *Lipscomb* guidelines to be appropriate for the *Tucker* issue.

### III

We are not unmindful of the ever increasing problems besetting the sentencing judge. These are increased by the possibility that a particular sentence will not stand up if it based in part upon a constitutionally deficient prior conviction even though it may have been reasonably inferable that the defendant being sentenced was guilty of the crime of which he had been earlier charged. The public is critical, and possibly justifiably so, of soft sentences on the repeating criminal; yet in the present situation the district court judge must on occasion eliminate from his consideration the very factor that tends to show that the defendant is a habitual criminal. We are sympathetic to the problem but are fortified by the knowledge that the federal bench at the district level will be fully capable of administering justice in accordance with constitutional requirements.

No. 73–1690 and No. 74–1314 affirmed; No. 74–1207 reversed and remanded.