Franklin D. STRADER, Appellant,

v.

Anthony F. TROY, Attorney General of Virginia, and Commonwealth of Virginia, Appellees.

No. 77–1617.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1977.

Decided Feb. 14, 1978.

Rehearing and Rehearing En Banc Denied March 28, 1978.

Eugene W. Purdom, Greensboro, N. C. (Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., on brief) for appellant.

Richard N. League, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of Raleigh, N. C., on brief) for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

In a *pro se* petition for a writ of habeas corpus, Franklin Strader, presently confined in North Carolina under a sentence of a North Carolina court, sought to effect his release on the ground that certain uncounseled Virginia convictions were permitted to enhance his North Carolina sentence. He also sought to have them removed from the consideration of the North Carolina Parole Board in its determination of his eligibility for parole.[1]

1. In earlier state proceedings in Virginia, Strader had alleged that these convictions had an adverse effect on his North Carolina application for parole, and he sought to have them expunged from his records. He attached the pleadings to his application in these proceed-

Relying upon the certificate of the sentencing state judge, the district court ruled that the Virginia convictions did not affect his North Carolina sentence. It therefore denied the writ. It also ruled that he had failed to exhaust his available state court remedies with regard to his claim against the parole board, and it dismissed his action.

Strader appeals, and we reverse. We hold that the certificate of the state trial judge fails to establish that the North Carolina sentence was not imposed in contravention of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). We hold also that, to the extent there has not been exhaustion, Strader may pursue his claims about the validity of the North Carolina sentence and against the parole board in the district court without further resort to Virginia or North Carolina state courts. We remand for further proceedings.

## I.

Between 1959 and 1964, Strader was convicted of numerous misdemeanor offenses in Virginia. He received jail sentences in only four instances. He was later convicted of second degree murder in North Carolina. In pronouncing sentence, the North Carolina trial judge mentioned Strader's Virginia criminal record. The North Carolina sentence, imposed March 25, 1969, was for a term of twenty-five to thirty years. Having served more than a fourth of his minimum sentence, Strader is eligible to be considered for parole. 3C N.C.G.S. § 148–58 (1975).

On December 23, 1974, Strader filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Virginia. He challenged as unconstitutional nineteen uncounseled misdemeanor convictions secured against him by the State of Virginia, including the four which had resulted in jail sentences, and he moved that the convictions be vacated and an order be entered expunging them from his records. In response to the petition, the Attorney General for the State of Virginia filed a motion to dismiss, stating unequivocally, "petitioner has exhausted his available state remedies."[2]

The district court dismissed the petition, ruling that Strader's North Carolina imprisonment had no relationship, direct or collateral, to his Virginia misdemeanor convictions, and Strader appealed. We granted a certificate of probable cause to appeal, and perceiving that the Virginia convictions, if invalid, might have an adverse effect on the likelihood that Strader would be granted parole, we remanded the case to the district court (a) directing it to transfer the case to the United States District Court for the Middle District of North Carolina, and (b) directing the latter to defer considering the case on its merits pending exhaustion of

---

ings and made them part of his application for the writ.

    Strader's allegations appear to have been proved correct. The record contains a letter to him, dated December 6, 1976, in which a caseworker for the North Carolina Parole Commission advised him:

    The Parole Commission has carefully considered your case and concluded that parole should not be granted at this time because of your previous court and criminal record.

    Our records indicate that you have prior convictions and because of your previous record, the Commission concluded you should demonstrate your willingness to handle responsibility by continuing on the Work Release Program for a further period of time.

**2.** The concession by the Attorney General was well founded. By a "Motion to Vacate," filed June 10, 1974, Strader had sought post-conviction relief in the Danville, Virginia, Corporation Court. There he moved to vacate prior uncounseled Danville, Virginia convictions, asserting that they would be a determining factor upon his parole from his North Carolina sentence, and he asked that the convictions be expunged. The Danville court denied relief on July 10, 1974. Although Strader did not seek regular appellate review, he filed a petition for a writ of mandamus in the Supreme Court of Virginia, praying that the Corporation Court be directed to give the relief that he had sought. After answer by the Commonwealth and a reply by Strader, the Supreme Court denied the writ by order entered October 29, 1974.

available North Carolina remedies or a showing that no effective North Carolina remedies were available. *Strader v. Miller*, No. 75–1923 (Order entered March 3, 1976) (unpublished).

The Virginia district court then transferred the case to the North Carolina district court. After the transfer, Strader filed a *pro se* pleading, alleging that he had exhausted all North Carolina remedies. He attached his pleadings in various North Carolina courts. From them, it appears that he sought to have his North Carolina sentence set aside and that he be resentenced or given other relief solely on the ground that the sentencing judge had relied on material misstatements of his prior criminal record. He did not introduce a claim that the allegedly uncounseled Virginia convictions played any part in his North Carolina sentence until his petition to the North Carolina Court of Appeals for a writ of certiorari to review the trial court's denial or relief. While North Carolina admits that Strader sought to introduce the issue at the appellate level, it argues that there has not been exhaustion in North Carolina of the claim that uncounseled Virginia convictions affected Strader's North Carolina sentence. It is perfectly clear, however, that Strader made no attempt to litigate in the North Carolina courts his claim that the parole board should be ordered not to consider his Virginia convictions in deciding his application for parole.

Before the North Carolina district court decided the instant case, the trial judge who sentenced Strader upon his conviction for second degree murder filed a certificate pursuant to 28 U.S.C. § 2245. This certificate stated that before imposing sentence, he received and was familiar with the contents of the F.B.I. report reciting Strader's allegedly uncounseled Virginia convictions but that "regardless of the F.B.I. Report, a lesser sentence would not have been imposed and to send [Strader] back for resentencing would result in the same sentence . . . and . . . would serve no useful purpose. . . ." There was an additional certification that the judge "feels there would not have been a lesser sentence [had the judge] been unaware of the prior convictions or had assumed their invalidity."

## II.

■ The ultimate question raised by Strader's two claims for relief is the effect of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), if Strader is successful in proving that he was convicted and sentenced in Virginia at a time when he was indigent and he was neither afforded counsel nor waived his right to counsel. *Tucker* holds that prior convictions obtained in violation of an accused's Sixth Amendment right to counsel may not be used to enhance punishment in a subsequent prosecution. The Sixth Amendment right to counsel extends to prosecutions for misdemeanors punishable by imprisonment, *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); and we have held that *Argersinger* extends retroactively to misdemeanor convictions that resulted in confinement. *See Marston v. Oliver*, 485 F.2d 705, 707 (4 Cir. 1973). It would follow that, if Strader's four Virginia convictions for which he was confined were invalid and were considered and affected the imposition of his North Carolina sentence, Strader is entitled to be resentenced or released. We think that it follows also that if the four Virginia convictions were invalid, the North Carolina Parole Board should not consider them in determining whether to grant Strader parole. *See Williams v. Peyton*, 372 F.2d 216, 220 (4 Cir. 1967).[3]

---

**3.** In *Williams*, a prisoner who was already eligible for parole on a sentence which he did not question was allowed to challenge other convictions that adversely affected his chances for parole. The holding was that he was sufficiently "in custody" for the other convictions to allow him to challenge them through federal habeas corpus. Implicit in this decision is the assumption that these other convictions would be excluded from the parole board's consideration if they were found to be invalid. As later discussed in the text, it is doubtful that after *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), a claim like this could be pursued through habeas corpus.

We must first resolve preliminary and procedural questions relating to which judicial forum should determine the merits of Strader's claims. They are: (1) with respect to the claim of a *Tucker* violation in the imposition of the North Carolina sentence, whether the certificate of the sentencing judge establishes that no *Tucker* violation occurred, and, if not, what court should make the determination of the validity of the prior convictions; and (2) with respect to the relief sought against the parole board, what court should pass upon Strader's claim of a Virginia denial of his Sixth Amendment right to counsel.

### III.

We treat first North Carolina's contention that the certificate of the North Carolina sentencing judge establishes that there was no violation of *Tucker.*

■ In *Brown v. United States,* 483 F.2d 116 (4 Cir. 1973), we established the procedure to be followed in a case where there is a claimed *Tucker* violation, and we reaffirmed and refined the test in *Stepheney v. United States,* 516 F.2d 7 (4 Cir. 1975). In these cases, we held that if the sentencing judge can say with certainty that the prior allegedly invalid convictions did not influence the sentence that he imposed, the case is at an end; otherwise, there must be resentencing or further proceedings to determine the validity of the prior convictions. As expressed in *Stepheney*:

> *Tucker's* holding seems to require resentencing or a determination of the validity of a challenged conviction unless the sentencing judge can find and affirm that at the time of sentencing he would have imposed the same sentence if the challenged prior conviction had not been called to his attention. If he cannot say that the sentence actually imposed was uninfluenced by the prior conviction in question, *Tucker* requires that the defendant either be resentenced without consideration of the prior conviction or that further proceedings be permitted to

determine the validity or invalidity of the prior conviction. The fact of seeming general appropriateness now is not enough if the sentencing judge cannot say that he would not have imposed a lesser sentence had he been unaware of the prior conviction or had assumed its invalidity at the time of sentencing. *Stepheney v. United States,* 516 F.2d at 9.

Of course *Brown* and *Stepheney* both involved federal prisoners who, by motion under 28 U.S.C. § 2255, were attacking their sentences in a federal forum. We think their holdings are applicable here to a state prisoner who attacks the validity of a *state* sentence in a federal forum. As we have noted earlier, 28 U.S.C. § 2245 authorizes a district court to receive and rely on a certificate of the state judge who presided at a prisoner's trial as to what occurred at the trial.

■ We conclude, however, that the certificate in the instant case is insufficient, under *Stepheney,* to establish that there could have been no *Tucker* violation. The essence of *Stepheney's* requirement is "that the sentence actually imposed was uninfluenced by the prior convictions . . . ." 516 F.2d at 9. Like the judge's statement in *Stepheney,* the certificate here is equivocal. While it says that, irrespective of the prior convictions, "a lesser sentence would not have been imposed," the sentencing judge only "feels" that there would not have been a lesser sentence if he had been unaware of the prior convictions. In order to comply with *Stepheney,* the judge must be able to say without qualification that the sentence was uninfluenced by the allegedly invalid prior convictions.

Now that we have restated the requirements of *Stepheney,* it may well be that the North Carolina sentencing judge can furnish a certificate which will meet its requirement. The district court, in further proceedings, should afford him that opportunity. But, against the possibility that he may be unable to do so, we consider next

the scope and nature of further proceedings.

## IV.

In *Brown*, in an extensive dictum, we indicated that, in a case arising from *Tucker*, if the district judge reached the issue of the validity of prior state convictions, that issue should be litigated in a court of the state of conviction, at least if there was a state remedy still available. Stated otherwise, state remedies must be exhausted before a federal forum will pass upon the validity of a prior conviction in connection with a claimed *Tucker* violation. This aspect of *Brown* has been rejected by a majority of the other circuits which have considered it.[4] We do not find it necessary to reconsider this aspect of *Brown*, however, because we think that under the facts of this case any requirement of exhaustion by *Brown* has been satisfied or is inapplicable.

■ The validity of Strader's North Carolina sentence depends upon the validity of his four Virginia sentences which resulted in incarceration. While North Carolina has an interest in sustaining the validity of the North Carolina sentence, it can hardly be said that it is appropriate that it pass upon the validity of Virginia sentences. As to Virginia, considerations of comity would seem to indicate that North Carolina should no more pass upon the validity of proceedings of a sister state if there is another remedy available than should a federal court pass upon the validity of state proceedings before exhaustion of state remedies. We therefore see no requirement of exhaustion of any North Carolina remedies.[5]

■ *Brown* would require exhaustion of Virginia remedies, but the Attorney General of Virginia, in the proceedings in the Western District of Virginia, has conceded that Virginia remedies have been exhausted. Of course, the Attorney General of North Carolina argues that Virginia remedies have not been exhausted. His theory is that when the Virginia trial court dismissed his motion to vacate his convictions, saying "[t]he effect of petitioner's conviction upon his release by other confining authorities is a matter to be taken up at the

4. The following circuits do not require exhaustion: *United States v. Sawaya*, 486 F.2d 890 (1 Cir. 1973); *Wilsey v. United States*, 496 F.2d 619 (2 Cir. 1974); *United States v. Walters*, 526 F.2d 359 (3 Cir. 1975); *Mitchell v. United States*, 482 F.2d 289 (5 Cir. 1973); *Reynolds v. United States*, 528 F.2d 461 (6 Cir. 1976); *Crovedi v. United States*, 517 F.2d 541 (7 Cir. 1975). The Eighth Circuit has adopted an exhaustion requirement, *Young v. United States*, 485 F.2d 292, 294 (8 Cir. 1973), but recent criticism of that case suggests that the circuit may soon reappraise its commitment to the exhaustion principle. *Stead v. Link*, 540 F.2d 923, 926–27 (8 Cir. 1976) (Bright, J., concurring).

*Mitchell v. United States*, 482 F.2d at 293–94, best expressed the non-exhaustion view:

The number of proceedings, the problems surrounding appointment of counsel for each of them, and the expenses involved would be multiplied many times. A ruling on the § 2255 motion would be long delayed. The chances that appellant would ultimately succeed in the § 2255 proceeding, even if his claim is meritorious, would as a practical matter be greatly diminished. Exhaustion of the movant, rather than exhaustion of other collateral attack possibilities, would be the likely result. We do not believe *Tucker* con-

templated or is consistent with the creation of this type of procedural obstacle course.
*See* Comment, Due Process at Sentencing: Implementing the Rule of *United States v. Tucker*, 125 U.Pa.L.Rev. 1111, 1115–24 (1977).

5. It may be argued that Strader exhausted North Carolina remedies. Although the issue Strader raised in the North Carolina trial court about the validity of his sentence is not identical to the one he now presses, it is close to the claim that the sentencing judge considered incorrect data about previous convictions, i. e., that Strader had not been convicted of escape three times, but only once, etc. Additionally, the present contention was raised at the appellate level and the North Carolina Court of Appeals did not direct a remand for the issue to be considered by the trial court. N.C.G.S. § 15–218 (1975) provides that constitutional issues not raised in the original or any amended application for post-conviction relief shall be deemed waived unless a court finds that "for sufficient reason" it was not asserted in the original application. The existence of any remaining North Carolina remedy would seem to be more theoretical than probable. *See Stem v. Turner*, 370 F.2d 895 (4 Cir. 1966).

time of his parole application," it impliedly ruled that he would have a remedy at a later date. There are two reasons why we reject this argument. First, it is contrary to the position of the Attorney General of Virginia whom we think can speak more authoritatively than the Attorney General of North Carolina with regard to Virginia law. Second, and more importantly, we conclude, for reasons that follow, that Strader should not be required to exhaust North Carolina remedies with respect to his claim that the parole board should not consider his four Virginia convictions if they were obtained in violation of his Sixth Amendment rights. Since the validity of those convictions must be determined by the district court with respect to that claim, no useful purpose would be served in requiring exhaustion in Virginia with regard to the claim of an invalid North Carolina sentence. On the contrary, the result would be a needless duplication of judicial time and effort without serving any objectives of comity and federalism.

### V.

█ Strader's claim for relief against the parole board was asserted in a *pro se* pleading for a writ of habeas corpus.[6] Strader does not assert that he is entitled to parole and should be released; he argues only that the parole board should consider his eligibility for parole without regard to his four allegedly invalid Virginia convictions. He also does not assert that if the four convictions are not considered he will be entitled to parole, now or ever. Thus, on the authority of *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), we think this aspect of Strader's claim for relief must be treated as a suit under 42 U.S.C. § 1983 and not as a petition for a writ of habeas corpus.

█ As *Preiser* and our decision in *McCray v. Burrell*, 516 F.2d 357 (4 Cir.), *cert. granted*, 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975), *cert. dismissed*, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976), hold, exhaustion of state remedies is not required in actions under § 1983.[7] It follows that the district court should proceed to a determination of the validity of Strader's four Virginia convictions which resulted in incarceration. The start of the determination should be deferred to afford the North Carolina trial judge the opportunity to make the revised certification described in Part III of this opinion. Depending upon the proof, the district court can then make a final determination of both of Strader's claims.

█ We deem it appropriate to remind the district court of the type and burden of proof in a claim of denial of a Sixth Amendment right. Since the challenge is based upon *Argersinger*, the court must make three related inquiries: Was Strader indigent at the time of the prosecutions; if so, was Strader provided counsel; and, if not, was counsel not provided because of a waiver of that right? Strader has the bur-

---

6. The parole board was not named as a respondent and could not have been effectively joined when the petition was filed in the Western District of Virginia. When the case was transferred to the Middle District of North Carolina, the parole board was not joined. Obviously, it should be joined as a defendant and the district court should exercise its authority under Rule 19(a), F.R.Civ.P., to order its joinder. By the same token, the Attorney General of Virginia should be dismissed as a defendant in this aspect of the proceeding since he has no interest in the outcome, as should the Commonwealth of Virginia for the same reason and the additional reason that it is not a "person" within the meaning of 42 U.S.C. § 1983. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

7. The language in our order in the prior appeal about exhaustion was adopted at the suggestion of the plaintiff and the Attorney General of Virginia to afford North Carolina the opportunity to decide what effect it would give to Strader's claim of uncounseled convictions affecting his sentence and consideration for parole. After now hearing the Attorney General of North Carolina, who did not appear in the prior appeal, and giving fuller consideration to the matter, we are now persuaded that North Carolina should not pass on the Virginia convictions for either purpose.

den of proving indigency, but this burden can be met if he alleges and testifies that he was indigent at the time of the trial. *Mitchell v. United States*, 482 F.2d 289, 294–95 (5 Cir. 1973). On the question of representation, the record of the prior proceedings must first be examined. If the record shows that Strader was not represented by counsel, or if it is silent, the state must prove that he waived his right to counsel. *Brown*, 483 F.2d at 121; *Mitchell*, 482 F.2d at 295–96; *United States v. Walters*, 526 F.2d 359, 363 (3 Cir. 1975). Because a waiver of counsel cannot be inferred from a silent record, Strader's prior convictions should be presumed to have been invalidly obtained unless there is affirmative evidence of either representation or a knowing waiver. *Brown*, 483 F.2d at 121.

Accordingly, we reverse the judgment of the district court and remand it for further proceedings in accordance with the views expressed herein.

*REVERSED AND REMANDED.*

WIDENER, Circuit Judge, dissenting:

I do not agree with the majority holding "that the certificate of the state trial judge fails to establish that the North Carolina sentence was not imposed in contravention of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)." At 1265. In addition, I do not agree that the North Carolina District Court on remand should pass upon the validity of the Virginia convictions; rather, I think a district court in Virginia to be a more appropriate forum. Therefore, I respectfully dissent.

I think the majority is incorrect as it states that *Brown* and *Stepheney* require the sentencing judge to "say with certainty that the prior allegedly invalid convictions did not influence the sentence that he imposed," at 1267. A careful reading of those opinions does not disclose that requirement in either case, and I note the majority cites no reference in either case discussing or requiring a standard of "certainty" because there is none. Instead, this court, in *Stepheney*, 516 F.2d at 9, required the sentencing judge to:

> say with assurance that assumption of invalidity of the questioned prior convictions, if made at the time of sentencing, would not have resulted in a lighter sentence . . . . .

Because our decisions following *Brown* have resulted in semantical investigation into the language employed by the sentencing judge, the certificate must be considered in its entirety:

> "FRANKLIN D. STRADER,
>                        Petitioner
>
>      – vs –
>
> ANDREW P. MILLER and THE COMMONWEALTH OF VIRGINIA,
>                       Respondents
>
>         CERTIFICATE OF THE TRIAL JUDGE

> "The undersigned having reviewed the contentions of the Petitioner in this action regarding previous convictions of Petitioner as set forth on the F.B.I. Report and the effect of said Report on the sentence entered in Petitioner's case by the undersigned does hereby certify and acknowledge that the contents of said F.B.I. Report were made known to the undersigned at or before the time of the sentencing of Petitioner as well as various other information both from the District Attorney and from the Petitioner's Attorney and the undersigned feels that regardless of the F.B.I. Report, a lesser sentence would not have been imposed and to send the Petitioner back for resentencing would result in the same sentence heretofore imposed being reimposed and sending him back for resentencing would serve no useful purpose either for the Petitioner or for the State.

> "The undersigned feels there would not have been a lesser sentence imposed had the undersigned been unaware of the prior convictions or had assumed their invalidity.

> "This the 7th day of September, 1976.

>      Signed "Robert A. Collier, Jr."
>      ROBERT A. COLLIER, JR.
>      Judge of the Superior Court
>      Twenty-Second Judicial District
>      of North Carolina"

I cannot agree with the majority that the certificate is in any way "equivocal," at 1267, assuming that the majority grants to "equivocal" its standard meaning:

having two or more significations: capable of more than one interpretation: of doubtful meaning: AMBIGUOUS

*Webster's Third New International Dictionary* at 769. *The American Heritage Dictionary* at 443 lists very nearly the same definition: "capable of two interpretations; cryptic; evasive; ambiguous." There is nothing "doubtful," "ambiguous," "cryptic," or "evasive" I can find in the certificate. Only one interpretation of the certificate seems possible, and that is Strader's earlier convictions made no difference to the State trial judge; were Strader again to come before the judge the same sentence would result.

In the majority's view, however, what seems to be the plain meaning of the certificate has been overturned by the sentencing judge's choice of the word "feel" to express his degree of certitude. "Feel" denotes "believe, think, hold," *Webster's Third New International Dictionary* at 834; and in legal parlance very nearly the same thing: see cases collected at "Feel, Felt," 16 *Words and Phrases*, p. 544. Unfortunately, to "believe, think, hold" does not provide the majority with the "certainty" that is required by the present opinion, or even the "assurance" required by *Stepheney*, for it invalidates the certificate on that ground.

In deciding that "feel," and thus "believe" and "think" lack the requisite certitude, the majority has established a more stringent standard for other judges than we demand of federal judges as shown by our own opinions. For "feel" see: *MacKethan v. Burrus, Cootes & Burrus*, 545 F.2d 1388, 1390 (4th Cir. 1976) ("We feel"); *ITO Corp. v. Benefits Review Board*, 529 F.2d 1080, 1088 (4th Cir. 1975) ("we do not feel"); *Collins v. Mathews*, 547 F.2d 795, 799 (4th Cir. 1976) (dissenting opinion) ("I feel"). For "think" see: *United States v. Figurski*, 545 F.2d 389, 391–92 (4th Cir. 1976) ("We think," "we do not think"); *EEOC v. United Virginia Bank*, 555 F.2d 403, 406 (4th Cir. 1977) ("We do not think"); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1359–62 (4th Cir. 1976) (dissenting opinion) ("I think"). For "believe" see: *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 635 (4th Cir. 1977) ("We also believe"); *Long v. Robinson*, 432 F.2d 977, 981 (4th Cir. 1970) ("I do not believe"); *Fuller v. Laurens County School Dist. No. 56*, 563 F.2d 137 at 141–142 (4th Cir. 1977) (dissenting opinion) ("I believe").

Like ourselves, the justices of the Supreme Court often deliver their opinions in terms of "feel," "think," or "believe." See, e. g., *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977) (Rehnquist, J., dissenting) ("If the Court feels"); *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 617, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977) (Marshall, J., dissenting) ("I therefore feel"); *Brewer v. Williams*, 430 U.S. 387, 409, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (Marshall, J., concurring) ("I think"); *Weatherford v. Bursey*, 429 U.S. 545, 556, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("we believe").

No one doubts that federal judges deliver their opinions "with assurance," *Stepheney*, supra, though the opinions speak in terms of "feel," "think," or "believe," for certainly we do not decide the liberty of citizens or their rights in property with less than assurance of the correctness of the opinion. We should not exact from other judges a standard we need not and do not set for ourselves.

Fairly read, the sentencing judge's certificate provides us with ample "assurance," "certainty," or whatever word may be chosen as the standard in the context of these cases. Fortunately, the sentencing judge here is permitted to furnish a new certificate. Perhaps he now will tell us "with

certainty" the effect of Strader's other convictions, or he may even give us something less than certainty, such as the "assurance" we required in *Stepheney,* and which has not been overruled for this is not an en banc court as was *Stepheney.* A change of one or two words in the current certificate, or a new certificate quoting from *Stepheney,* 516 F.2d at 9, should suffice and, I hope, avoid the need for further ventures into what I consider to be the overly technical construction of *Brown* which has now subverted its plain meaning and become a play on words.

Even accepting for argument what I consider to be an unduly strict construction of *Brown,* I cannot disagree with its direction to the district court on remand to "proceed to a determination of the validity of Strader's four Virginia convictions which resulted in incarceration," at 1269. But I disagree with the apparently unlimited sweep of the majority's holding if applied to facts other than present here. The North Carolina federal court may indeed pass upon the validity of Strader's Virginia convictions, but only as those convictions "form a basis for the conditions of his confinement in North Carolina." *Norris v. Georgia,* 522 F.2d 1006, 1012 (4th Cir. 1975). The district court may not consider or adjudge the intrinsic validity of the Virginia convictions. *Id.* A contrary construction of the opinion would adopt the dissenting position in *Norris* which another panel may not do.[1]

I think it a proper, if not required, practice that an attack upon a State conviction be transferred to a federal court within the convicting State. In *Grant v. Connecticut,* No. 77–1698 (order filed October 19, 1977), for example, this court directed a district court in North Carolina to transfer the petitioner's attack on his Connecticut conviction to the United States District Court for the District of Connecticut.

In Strader's case, however, this court already has ordered a transfer from the Western District of Virginia, where Strader originally filed his action, to the Middle District of North Carolina so Strader could exhaust his North Carolina State remedies. In light of this history, it might appear unseemly for the North Carolina district court to order the cause transferred back to the Western District of Virginia. Nevertheless, transfer has so many obvious advantages, the district court should order it. Not only would transfer enable the prisoner to get a final adjudication of his convictions, for a district court in Virginia could determine their validity for all purposes, not merely for their limited effect on Strader's North Carolina incarceration; in addition, that court could consider Strader's claims without the restriction of limited process and subpoena powers which necessarily confront a North Carolina district court in the consideration of a Virginia conviction. See *Norris v. Georgia,* 522 F.2d 1006, 1008–10 (4th Cir. 1975). After those proceedings were complete, Strader might then proceed with his case against the North Carolina Parole Board.

---

1. In passing, I note the implied criticism of the majority of a part of *Brown* it styles dictum. The opinion neglects to mention the same requirement in the en banc opinion in *Stepheney,* p. 9.