**Claude Frizzell BLOODGOOD, III, Appellant,**

v.

**David A. GARRAGHTY, Warden; Attorney General of Delaware, Appellees.**

No. 85–6075.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1985.

Decided Feb. 14, 1986.

Richard T. Robol (Seawell, Dalton, Hughes & Timms, Norfolk, Va., on brief), for appellant.

Michael A. Likavec, Asst. Atty. Gen. (William G. Broaddus, Atty. Gen. of Va., David R. Curry, Richmond, Va., on brief), for appellees.

Before HALL, MURNAGHAN and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

Claude Frizzell Bloodgood, III challenges under 42 U.S.C. § 1983 the administrative decisions denying him parole and A-custody (minimum security) status. He contends that in making their decisions the Virginia Parole Board and the Central Classification Board relied on prior uncounseled convictions. He asks this court to compel the Parole Board to review his application for parole without considering the convictions, and also to enjoin the Board from ever considering the convictions in the future. The district court granted summary judgment for the defendants.

■ We affirm. A parole proceeding is not a proper forum for an inmate to contest the legal sufficiency of past convictions. Moreover, we do not believe that the Parole Board or the Central Classification Board even relied upon the convictions in question or intend to use the allegedly uncounseled convictions in the future. Therefore, the district court properly refused Bloodgood relief.[1]

## I.

In 1962, Bloodgood was charged with three counts of burglary in Delaware. Bloodgood alleges that he was not represented by counsel and that he did not waive counsel; he pled guilty to all three counts. Between 1962 and 1967, Bloodgood was imprisoned in Delaware. In 1963, the Supreme Court decided *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), giving indigent felony defendants the right to counsel. The Court extended *Gideon* in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d

592 (1972), holding that convictions obtained in violation of *Gideon* cannot be considered as a factor in sentencing. *See also, Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

After *Gideon* was decided, Bloodgood petitioned for a writ of habeas corpus on the grounds that he did not have assistance of counsel, and did not waive his right to counsel. The Superior Court of Delaware dismissed Bloodgood's petition as frivolous, writing in a letter to Bloodgood that: "The records of this Court show that you were offered a court-appointed attorney but that you refused this offer. In so refusing, you waived your right to be represented." Bloodgood appealed to the Delaware Supreme Court, which decided that the record before it was insufficient to sustain Bloodgood's contentions. The Supreme Court then remanded, and gave Bloodgood leave to file a new petition with the court below. The record is silent as to what happened thereafter.

In 1969, Bloodgood was convicted in Norfolk, Virginia of forgery, uttering a forged check, and grand larceny. In 1970, the Norfolk court convicted Bloodgood of the first degree murder of his mother, and sentenced him to death. The sentence was later commuted to life in prison, and Bloodgood is currently serving that sentence. Bloodgood escaped in 1974 while playing in a chess tournament outside the institution. He was caught and returned to prison, and convicted of escape, bringing the total number of his felony offenses in Virginia to five.

Bloodgood was eligible for parole in 1983, but was denied parole because of the "seriousness of [his] crime" and his "pattern of criminal conduct." He contends, however, that he has been denied parole and A-custody status because of his uncounseled convictions. He now seeks to erase the 1962 convictions and to receive a parole redetermination upon his expunged record. In the event the Board decides to

---

**1.** The district court also properly granted the motion to dismiss the Delaware Attorney General for want of personal jurisdiction.

deny parole in Virginia, it will review each prisoner's case every year until that prisoner is released. Va.Code § 53.1–154 (1985).

## II.

We should note that Bloodgood's claim of a Sixth Amendment violation in the Delaware convictions is subject to some doubt. Bloodgood collaterally attacked his 1962 convictions in state court. The Delaware Superior Court, as noted *supra,* indicated that he had been offered court-appointed counsel and waived his Sixth Amendment right by refusing the offer. In his affidavit, Bloodgood vigorously contests that statement. The record on this matter, now over two decades old, is slim.

In considering Bloodgood's claim, we first take cognizance of the context in which that claim was brought. Courts have generally afforded parole authorities broad discretion in their exercise of expertise, and have refused to allow 42 U.S.C. § 1983 to become a backdoor to review of all denials of parole. *Tarlton v. Clark,* 441 F.2d 384 (5th Cir.), *cert. denied,* 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *Jackson v. Shields,* 438 F.Supp. 183, 184 (W.D.Va.1977). Simply put, "the federal courts are not an appropriate forum to review the discretionary decisions of prison administrators which are based on evidence conflicting in nature and degree." *Paine v. Baker,* 595 F.2d 197, 200 (4th Cir.), *cert. denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979).

 There are some 10,800 inmates in the Virginia penal system. Each one of them has a file. That file is likely to be voluminous, and contain numerous pieces of information, some correct, some open to contest. There is, however, no constitutionally mandated right of access of an inmate to his prison file. *Paine,* 595 F.2d at 200. Nor is there any cause of action under § 1983 to contest every piece of information an inmate believes is incorrect.

It would involve an intolerable burden on courts and an unacceptable usurpation of parole authority if prisoners launched § 1983 actions to test the veracity of file contents in every parole decision. Thus the oversight of federal courts has understandably been confined to matters of procedure. In the parole setting, procedural due process requires no more than a statement of reasons indicating to the inmate why parole has been denied. *Franklin v. Shields,* 569 F.2d 784, 800 (4th Cir.) (en banc), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978).

 The usual way for an inmate to attack allegedly infirm convictions is a habeas corpus petition which poses directly to the decision-maker the question of constitutional error.[2] A parole proceeding, however, is not a formal trial, or even a judicially supervised evidentiary hearing. *See Fardella v. Garrison,* 698 F.2d 208, 212 (4th Cir.1982). A parole board is neither established nor equipped to rule upon the validity of every underlying conviction on which its decision on parole may rest. The board's inquiry is not the legal foundation of some past conviction, but a prediction of a prisoner's prospects for a law-abiding life. *Franklin v. Shields,* 569 F.2d at 800. The factors, both objective and otherwise, that may inform this prediction are numerous. We decline to shift this general focus of inquiry by requiring the board to review or reject convictions where the courts themselves have not done so. Rather, we agree with the Fifth Circuit's holding in an analogous context that "until the conviction is judicially nullified, its underlying validity plays no necessary part in the consideration of whether a probated prison term should be continued in view of the alleged violation of the terms of probation." *United States v. Francischine,* 512 F.2d 827, 828 (5th Cir.), *cert. denied,* 423

---

**2.** The fact that petitioner initially styled his decision a § 2254 proceeding does not alter the fact that it was, in substance, what the magistrate found it to be: an attempt under § 1983 to contest his custody status and denial of parole in an incarceration unrelated to the earlier conviction. *See Strader v. Troy,* 571 F.2d 1263, 1269 (4th Cir.1978).

U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975).[3]

### III.

■ In Bloodgood's case, however, the claim pertains to *Gideon v. Wainwright, supra,* and the law of this circuit suggests that uncounseled convictions are especially suspect. *Strader v. Troy,* 571 F.2d 1263, 1266 (4th Cir.1978), held that if a sentencing court found prior convictions to be uncounseled, it followed also that the parole board "should not consider them in determining whether to grant Strader parole." Whether Bloodgood is permitted to renew his attack upon the allegedly uncounseled convictions in light of the earlier denial of collateral relief in Delaware is a question we need not address, because we do not believe that prison authorities even relied upon them. Affidavits from Frank Saunders, a member of the Virginia Parole Board and Louis Cei, Chief of Classification of the Virginia Department of Corrections, explained the independent basis for the adverse actions in Bloodgood's case. Together these affidavits amply support the magistrate's grant of summary judgment for defendants.

Saunders said in his affidavit that Bloodgood was denied parole for two reasons. First, he was in prison for murdering his mother. Saunders asserted that the Parole Board would have denied Bloodgood parole simply because of the seriousness of that crime. The second reason for denial of parole was Bloodgood's pattern of criminal conduct. When Bloodgood committed the murder, he had only recently been convicted of felony offenses in Virginia. Therefore, Saunders concluded that the 1962 Delaware convictions had no bearing on the denial of parole, stating in his affidavit that "the Parole Board is not currently denying Bloodgood parole on the basis of his 1962 convictions in the State of Delaware, nor will those convictions be considered in any future parole decisions."

Cei likewise said in his affidavit that the Classification Committee had not relied on the 1962 convictions to deny Bloodgood A-custody status. The Central Classification Board calculates a numerical score for each prisoner and then bases custody assignments on that score. For example, the prisoner is given points for the severity of the offense, prior felony convictions, or escapes. A lower score would make a prisoner eligible for lower custody status. However, there is a provision for overriding the score and assigning higher custody status if, for example, the prisoner has documented mental instability or a pattern of repeated escapes, or has committed an offense involving extraordinary violence. *See* Commonwealth of Virginia, Department of Corrections, Division of Adult Services, Guideline 823, Dec. 17, 1982.

The Classification Board recommended that Bloodgood remain in B-custody status. Cei said in his affidavit that the Department of Corrections did take Bloodgood's 1962 convictions into account in calculating his numerical rating. Even with the convictions counted, Bloodgood received a rating that made him eligible for A-custody (minimum security) status. He was, however, denied A-custody status "despite his numerical rating, because of the violent nature of the offense for which he was presently incarcerated, the murder of his mother." Cei concluded that the 1962 convictions had not been used, and are not being used, to deny Bloodgood A-custody status.

Bloodgood filed counter-affidavits in which he contended that his Delaware convictions were used to compute his score for purposes of classification, and that he had received a letter from the Parole Board giving a "pattern of criminal conduct" as

---

**3.** The fact that collateral review of a prior conviction may be presently foreclosed to an inmate due to staleness or repetitiveness of the claims, Habeas Corpus Rule 9, a lack of custody relating to the earlier conviction, *Harris v. Ingram,* 683 F.2d 97 (4th Cir.1982), or a procedur-

al forfeiture in state court, *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), is not material. If anything, it suggests the inadvisability of constituting a parole board as a habeas tribunal where the law of habeas corpus would itself foreclose review.

one of the reasons for denial of parole. None of this, however, contradicts the statements in the Saunders and Cei affidavits mentioned above. The remainder of the Bloodgood affidavits consisted of conclusory allegations of the falsity or ignorance of the sworn statements of these two state officials. As the magistrate found, however, Bloodgood did not deny that he was advised "that the primary reason he was denied parole and a lower custody status was the heinous nature of the offense for which he stands incarcerated."

Bloodgood's assertions thus fall far short of showing that the Parole Board or Classification Board relied on his 1962 convictions in making their decisions. For Bloodgood to escape summary judgment on this question, there must be a genuine issue of fact as to the board's reliance, one that is more than speculative or theoretical. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). While Bloodgood is entitled as a non-moving party to the benefit of all conflicting inferences, he must first create a conflict of inferences by countering the Cei and Saunders affidavits with more than bare allegations of error. Fed.R.Civ.P. 56(e). Otherwise, there remains no genuine issue as to the boards' reliance for the trier of fact to resolve.

The Cei and Saunders affidavits, apart from being uncontradicted, have an aura of plausibility that is difficult to dispute. It is improbable that the Parole Board and Classification Board would have relied on 1962 Delaware convictions when there are five more recent and generally more serious Virginia convictions in Bloodgood's file, including a 1970 first degree murder of his mother and a 1974 escape. The Parole Board, as it is required to do, gave Bloodgood a written statement listing the reasons for denial of parole. *Franklin v. Shields*, 569 F.2d at 800. When the Board gives valid reasons for its decision, this court will not assume that the Board relied on possibly invalid factors. *Jackson v. Shields*, 438 F.Supp. at 184 ("Furthermore, the fact that the Virginia Parole Board took the prisoner's ... prior criminal record into consideration in determining his

eligibility for parole was not, without more, a basis for concluding the Board had considered any prior unconstitutional convictions." (citations omitted)). Moreover, where the denial of parole or lower custody status rests on one constitutionally valid ground, the Board's consideration of an allegedly invalid ground would not violate a constitutional right. *See Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Here denial rested upon two valid reasons, and we see no reason to disturb the administrative judgments.

## IV.

Finally, we decline the invitation to enjoin the Parole Board and Classification Board from using the 1962 convictions in the future. For the reasons expressed above, we believe this court should be hesitant to entertain general actions for expungement of allegedly erroneous convictions apart from the customary avenues of collateral attack. There also exists no justification for rehashing the merits of these allegedly infirm convictions where there is no showing that the Parole Board relied upon them. Further, we decline to proceed on the assumption that the Parole Board and Classification Board, despite their assurances to the contrary, will consider the Delaware felonies. Having noted that the Department of Corrections did not rely on the 1962 convictions in denying Bloodgood parole or A-custody status, we will not leap to the conclusion that the Department of Corrections will in the future return to consider them.

We assume, absent evidence to the contrary, that state agencies and agents act in good faith. An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action. "Injunction issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931). As one circuit court has

noted recently, "bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir.1985). To slap injunctions on state officials who have never violated the law or shown any intention to violate the law would exceed the proper bounds of equitable discretion.

V.

We decline to disturb Virginia's denial of parole or of A-custody status to petitioner. We also decline to expunge the 1962 convictions from petitioner's file or to otherwise enjoin any state officials in this case. The judgment of dismissal of this action is in all respects

AFFIRMED.