894 F.2d 401
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jerry Lee BEESON, Plaintiff-Appellee,
v.
Aaron JOHNSON; James P. Mongam; Harvey Allsbrook; Donald
E. Batton; J.H. Griffin, Warden; Joseph L.
Hamilton, Director--Division of Prisons,
Defendants-Appellants,
and
Officer Judd, Defendant.
 No. 89-7146.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 30, 1989.
Decided: Jan. 2, 1990.
 
 Sylvia Hargett Thibaut, Assistant Attorney General; Lucien Capone, III, Special Deputy Attorney General (Lacy H. Thornburg, Attorney General, on brief), for appellants.
 Gary Robert Govert (R.L. Adams, Smith, Helms, Mullis & Moore, on brief), for appellee.
 Before PHILLIPS and WILKINSON, Circuit Judges, and JAMES C. FOX, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PHILLIPS, Circuit Judge:
 
 
 1
 In this case, various North Carolina prison officials appeal from the judgment of the United States District Court for the Eastern District of North Carolina assigning as error the court's failure to grant them qualified immunity with respect to a claim for damages brought under 42 U.S.C. Sec. 1983. Expressing no view on the constitutionality of the prison officials' conduct, we reverse the district court's denial of summary judgment and hold that the defendant prison officials were entitled to qualified immunity as to the damages claim.
 
 
 2
 * Appellee, Jerry Lee Beeson, is an inmate in the North Carolina prison system. He is a former six-pack-a-day cigarette smoker with a long history of respiratory ailment. The gist of his pro se complaint was that prison officials refused, in the face of doctors' recommendations, to provide him with a smoke-free environment and that such refusal violated his eighth amendment right to be free from cruel and unusual punishment. He sought monetary and injunctive relief. The defendants' answer, in addition to denying the claim of constitutional violation, also pleaded, though not in specific terms, qualified immunity as an affirmative defense to the claim for monetary relief. J.A. at 83, 84 ("SEVENTH DEFENSE," "EIGHTH DEFENSE"). In response to defendants' ensuing motion for summary judgment, Beeson submitted affidavits and deposition testimony to the effect that he suffered from non-specific rhinitis, probably aggravated by environmental tobacco smoke (ETS); that prison physicians had recommended that he be housed in a smoke-free environment; and that in response to these recommendations the defendants had taken no action.
 
 
 3
 A magistrate, addressing only the merits of the constitutional claim, recommended denial of summary judgment, on the basis that Beeson's complaint stated a viable eighth amendment claim, and that genuine issues of fact respecting the merits of that claim precluded summary judgment. The district court, also confining its decision to the viability of the constitutional claim, basically accepted the magistrate's recommendation and denied summary judgment, again without addressing the defendants' alternative defense of qualified immunity.
 
 
 4
 Specifically invoking the qualified immunity principle of Harlow v. Fitzgerald, 475 U.S. 800 (1982), and the related appealability principle of Mitchell v. Forsyth, 472 U.S. 511 (1985), defendants appealed the denial of their motion for summary judgment. See J.A. at 90, 91.
 
 II
 
 5
 The parties have joined issue on this appeal solely on the question of defendants' entitlement to qualified immunity, and we address that as the sole issue before us. Though the district court did not directly address this issue, we may properly do so under the circumstances. Our review of summary judgment rulings is, in general, plenary: we apply the same standard as does the district court. See generally 10 Wright & Miller, Federal Practice & Procedure: Civil Sec. 2716. And in this particular case, though there might be questions about the extent to which the issue was fairly raised by defendants' summary judgment motion in the district court, no objection to our considering it in the first instance has been raised by the plaintiff who, as indicated, has accepted it as the sole issue on this appeal.* In addressing this narrow issue, we of course do not address the district court's denial of summary judgment with respect to Beeson's claim for injunctive relief, as to which the qualified immunity defense has no application. The district court's denial of summary judgment as to that portion of Beeson's claim is therefore unaffected by our decision on this appeal.
 
 
 6
 Qualified immunity shields from civil damages liability government officials performing discretionary functions so long as the officials' conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This principle reflects the concern that civil damages awards against public officials for every judicially determined violation of constitutional rights would prove too expensive to the public, discourage public service employment, and impair governmental decision-making. See id. at 814. For purposes of analyzing whether an official's conduct has violated clearly established rights, the contours of that right must be sufficiently clear that a reasonable official would understand that the official's conduct violates that right. See Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 7
 The general eighth amendment right at issue was of course clearly established at the critical time-in the longstanding principle that a convict may not be subjected by state actors to deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). But the qualified immunity inquiry must delve deeper, into the more fact-specific question whether a reasonable person in the position of these officials would have known, based upon the information they possessed at the time, that failure to put Beeson in a smoke-free environment would violate that clearly established general right, i.e., would constitute deliberate indifference to a serious medical need. See Anderson, 483 U.S. at 639-40; Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir.1987) (question not so much the clarity of the general right, but of whether the officials' conduct clearly violated that right).
 
 
 8
 We are satisfied that eighth amendment law respecting application of the "deliberate indifference" standard in the particular factual context here at issue was not so clearly established at the critical time that a reasonable person in the position of these officials would have known that failure to provide a smoke-free environment for Beeson would violate that standard. First off, there was a general dearth of decisional law even considering whether and to what extent general environmental hazards, including ETS, in the prison setting might give rise to "serious medical needs" of particular prisoners. No Supreme Court decision had (or has yet) addressed the general question. No published lower federal court decision, so far as we are advised, had then held specifically that failure to provide smoke-free environment to a prisoner suffering from a smoke-aggravated condition such as Beeson's might violate his eighth amendment rights. The closest published federal decision brought to our attention (and presumably chargeable to the officials' knowledge here) was a Ninth Circuit case, Franklin v. Oregon, 662 F.2d 1337 (9th Cir.1981), in which it was held that a complaint alleging that a prisoner with a throat tumor had been deliberately placed in the cell of a heavy smoker stated a viable Sec. 1983 eighth amendment claim. Without regard to the merits of that decision in addressing the ultimate constitutional issue, it is obvious that as a pleading-sufficiency decision of a lower federal court of another circuit, it could not be thought to have established within this circuit the general contours of any specific eighth amendment right of the type here asserted.
 
 
 9
 Beyond the dearth of authoritative legal developments concerning the deliberate indifference standard's application in this general context, there are specific uncertainties about its application here that further militate in favor of immunity. In applying the objective test of qualified immunity mandated by Harlow and Anderson, official conduct has to be assessed in light of the information then available to the officials at the time of their challenged conduct. See Anderson, 483 U.S. at 641. Here the officials had never been advised by medical personnel that Beeson's condition absolutely required protective action on their part. They were never told more than that it should be taken, "if possible." Even if the law had been more clearly settled that for eighth amendment purposes specific environmental hazards might produce "serious medical needs," a reasonable person in these officials' position might reasonably have concluded from the ambivalence of the medical advice that Beeson's "need," though real, was not sufficiently "serious" to impose a constitutional duty upon them such that a failure to act would constitute deliberate indifference to that need.
 
 
 10
 In sum, we conclude that under the objective "good faith" test of Harlow, a reasonable person in these prison officials' position might reasonably have believed, based on the information then available to them, that failure to place Beeson in a smoke-free environment would not violate any clearly established eighth amendment right. As the Supreme Court has more recently phrased the Harlow test in alternative negative and positive formulations: "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [he should take the challenged course of action]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1985). In minimal terms, we have no doubt that reasonably competent prison officials, confronted with the issue before these officials, at least could have disagreed on it.
 
 
 11
 For these reasons, we hold that the defendants were entitled to qualified immunity in respect of the damages claim against them, hence to summary judgment in their favor on those claims.
 
 
 12
 In finding qualified immunity here, we obviously express no opinion on the underlying question of whether a constitutional violation has occurred as alleged.
 
 
 13
 REVERSED.
 
 
 
 *
 The defense was pleaded, though rather cryptically and not by name, in defendants' final answer, see J.A. at 83-84. It was not specifically identified in either the defendants' initial or renewed motions for summary judgment as a discrete basis for the motion. See J.A. at 42-43; 76-77. Whether it may have been raised in supporting memoranda or oral argument on the motions is not reflected in the Joint Appendix. Assuming that it was not otherwise presented, the magistrate and district judge may certainly not be faulted for failing to address it, as is usually appropriate, as the first-line defense to the constitutional claim