BANK TRAVEL BANK and Jack
Amariglio–Dunn, Plaintiffs,

v.

John McCOY, et al., Defendants.

No. 92–59–CIV–5–BO.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Oct. 5, 1992.

Jack Amariglio–Dunn, pro se.

Odes L. Stroupe, Jr., Hunton & Williams,
Raleigh, N.C., for defendants.

## ORDER

BOYLE, District Judge.

This matter is before the court on defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Facts

Sometime prior to August, 1988, plaintiff Jack Ameriglio–Dunn developed what he believed to be a unique idea for a "Travel Bank," which would combine the services of a bank and travel agency in arranging and financing vacation travel. Under plaintiff's scheme, individuals planning vacations would deposit a minimum of $50.00 per month in a special escrow account for an agreed-upon period. Once the vacationer had accumulated 60% of the trip's anticipated cost, the Travel Bank would advance the remaining 40%. The traveler would then repay the loan, without interest, over a period equal to that spent accumulating the initial 60%.

For a time, plaintiff employed the Travel Bank concept on a small scale through several travel agencies he owned in North Carolina. As part of his effort to market the idea, plaintiff distributed advertisements and brochures describing the plan and its features to other travel agencies and individuals. He soon realized, however, that he needed the greater financial resources of a bank in order to expand his scheme. Plaintiff approached several local banks regarding the concept, but without success. Due to his suspicion that these banks were wrongfully using some aspects of the Travel Bank scheme, plaintiff registered the Travel Bank logo as a service mark with the state of North Carolina, and applied for federal trademark registration.

In May, 1991, plaintiff noticed an advertisement placed by defendant Banc One Travel Corporation (Banc One Travel) in a national trade magazine, seeking applicants for manager of its Columbus, Ohio travel agency. At the time, Banc One Travel was a wholly-owned non-bank subsidiary of Bank One, Mansfield, Ohio, which was in turn a bank affiliate of defendant Banc One Corporation, (Banc One) a bank holding company. Plaintiff responded to the ad with a resume, a packet of Travel Bank promotional material, and a letter stating that, if he were hired for the manager's position, he would transfer his three existing North Carolina travel agency offices and the Travel Bank concept to Banc One Travel. The application and other materials were addressed to defendant Diane Steenman, then President of Banc One Travel.

After some time passed without response, plaintiff wrote directly to defendant John McCoy, Chief Executive of Banc One, to complain about Steenman's mishandling of his application. Shortly thereafter, plaintiff was contacted by defendant Denise Macerelli, then Director of Travel Management for Banc One Travel. According to plaintiff, Macerelli explained that his application had been misplaced, and that, although the manager's position in Columbus had already been filled, he was welcome to reapply for a similar position then opening in Cleveland. Plaintiff and Macerelli also allegedly discussed the Travel Bank; plaintiff claims that Macerelli asked for as much information as he could supply about the idea, with the understanding that she would then set up a meeting in which plaintiff could present the concept to other company officials. Plaintiff resubmitted the Travel Bank promotional materials, which he offered, in his words, "for possible acquisition/merger or any kind of cooperation, at no cost and/or obligation to BANK [sic] ONE TRAVEL."

On July 20, 1991, Banc One Travel informed plaintiff that he would not be hired for the Cleveland post. Plaintiff again became concerned that he had divulged too much information concerning the Travel Bank, and feared that Banc One Corporation might misappropriate and exploit the concept without compensating him. He mounted another letter-writing campaign to defendant McCoy, threatening suit in order to prevent the misuse of his idea. When Banc One subsequently sold Banc One Travel to defendant USTravel, Southeast (USTS), USTS and its President, defendant Ralph Manaker, also became targets of plaintiff's litigational threats.

Plaintiff, proceeding *pro se*, filed the instant action for trademark and copyright infringement on January 22, 1992. His complaint seeks a "promissory note" to the effect that defendants will neither use nor divulge the Travel Bank concept, on pain of forfeiting a ten-year, fifteen million dollar security bond. Defendants now move for summary judgment. Characterizing plaintiff's action as sounding in misappropriation of trade secrets, rather than trademark and copyright infringement, defendants seek dismissal on three grounds: that the Travel Bank idea is not protectable as a trade secret; that if it were, plaintiff waived that protection through its repeated and unconditional disclosure; and, finally, that plaintiff has not shown defendants' use or intended use of the idea, as is necessary to support liability.

### Discussion

■ Although plaintiff captioned his complaint "for Infringement of Copyright and Trademark," defendants are clearly correct in their assertion that this action cannot be maintained on those grounds. Plaintiff's sole concern is to prevent the misuse of his ideas; intangible ideas are not protectable under federal copyright or trademark law or North Carolina's trademark statute. *See* 15 U.S.C. §§ 1051, 1053; 17 U.S.C. § 102(b); N.C.G.S. § 80–1. Further, despite plaintiff's demand for a "promissory note" secured by a bond, his requested remedy is better cast as an injunction barring defendants' unauthorized use of the Travel Bank scheme. In deference to plaintiff's *pro se* status, this court will not impose strict requirements of particularity upon his pleadings, but will interpret them, where possible, so as to avoid

inadvertent procedural default. Therefore, the court will treat plaintiff's claim as seeking injunctive relief under the law of trade secrets.

North Carolina's Trade Secrets Protection Act, N.G.G.S. § 66–152(3), defines a trade secret as valuable business or technical information that a) is neither "generally known nor readily ascertainable through independent development or reverse ·engineering," and b) has been subject to "efforts that are reasonable under the circumstances to maintain its secrecy." In order to resist defendant's motion for summary judgment, plaintiff must allege facts sufficient to allow a reasonable finder of fact to conclude that his Travel Bank concept satisfies these two requirements. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2727. Further, to obtain the injunctive remedy he seeks, plaintiff must also make a showing of existing or imminent harm from defendants' misuse of his ideas. *See Bloodgood v. Garraghty*, 783 F.2d 470, 475 (4th Cir. 1986) (injunctive remedy will not issue absent imminent threat of illegal action); *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931) (injunctions not granted "against something merely feared as liable to occur at some indefinite time in the future").

■ Even when viewed, as it must be, in a light most favorable to him, plaintiff's forecast of evidence could not support a finding that his Travel Bank idea warrants trade secret protection. Although neither party has demonstrated an ability to prove how widely known the concept or its component features are in the banking industry, it seems plain that anyone with reasonable skill in the field could divine and copy the basic concept of the plan based on plaintiff's own promotional materials. In addition to being freely distributed to various individuals, travel agencies, and banks throughout North Carolina, these same materials were twice sent to defendants, accompanied by plaintiff's explicit waiver of

any "cost or ·obligation" on defendants' part. Assuming, therefore, that plaintiff's concept could be found both unknown and not easily ascertainable, his repeated disclosure of the details of the Travel Bank, without any attempt to ensure the information's confidentiality, voids any claim to trade secret protection. *See* W. Prosser & W. Keeton, *Torts* § 130 (5th ed. 1984) (explaining secrecy requirement in trade secret actions); Restatement of Torts § 757 Comment b (1939) (to establish presence of trade secret, "a substantial element of secrecy must exist, so that except by use of improper means, there would be difficulty in acquiring information").

Plaintiff's forecast of evidence falls similarly short on the issue of imminent harm. No evidence of any kind has been adduced to show that any of the defendants intend to put plaintiff's Travel Bank concept to use. On the contrary, items placed in the record by plaintiff state that Banc One sold its Banc One Travel subsidiary to USTravel in furtherance of its decision to get out of the travel business entirely. Thus, even were plaintiff's idea protectable, he would not be entitled to the prospective, injunctive relief he seeks. *See Bloodgood*, 783 F.2d at 475.

Plaintiff's evidentiary showing is insufficient to create fair doubt that the Travel Bank concept is a protectable trade secret or that an injunction against defendants is necessary to prevent its misappropriation. Accordingly, defendants' motion for summary judgment is ALLOWED.

SO ORDERED.