CENTURY ALUMINUM OF WEST VIRGINIA, INC., Plaintiff,

v.

UNITED STEELWORKERS OF AMERICA, et al., Defendants.

No. Civ.A. 2:99–0728.

United States District Court, S.D. West Virginia, Charleston Division.

Jan. 28, 2000.

Ricklin Brown, John R. Teare, Jr. and Holly M. McClanahan, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for plaintiff.

James M. Haviland; Crandall, Pyles, Haviland & Turner; Charleston, WV, Joseph P. Stuligross, Pittsburgh, PA, Thomas P. Maroney, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiff's motion to amend the Complaint and Defendants' motion to dismiss for failure to exhaust contractual remedies. For reasons discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Early on the morning of August 24, 1999 Plaintiff Century Aluminum ("Century") applied for a temporary restraining order ("TRO"), which the Court granted follow-

ing a 5:00 a.m. hearing. In the Complaint filed later that day, Plaintiff alleged that beginning about 8:00 p.m. on August 23, 1999 individual employees, members of Defendant Local 5668 ("Local"), hiding their identities with masks and other disguises, massed at the entrance roads to the Century plant in Ravenswood, West Virginia. Other employees then left their assigned shifts and later-shift employees refused to enter the plant. Asserting federal jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, the Complaint requested the TRO, a preliminary injunction, compensatory damages, and any further relief appropriate under the circumstances.

■ In response to the TRO, all employees returned to work by the evening shift on August 24. No further work stoppages at the Century Aluminum plant have been reported to the Court since. The TRO lapsed after ten (10) days [1] and, by agreement of the parties, no preliminary injunction hearing was held.[2] In their Answers both the Local and the United Steel Workers of America ("International") deny all allegations that employee union members engaged in a concerted work stoppage or "wildcat strike" or that either the Local or International should or could have contained that alleged strike, but failed to.

Plaintiff now moves to amend the Complaint to add twenty-five (25) additional plaintiffs and forty-nine (49) additional defendants. Plaintiff requests the Court exercise supplemental jurisdiction over state

1. On August 25, 1999 the United Steelworkers moved to vacate the TRO, however, the Court held the TRO was properly issued and would remain in full force and effect until September 3, 1999. *Century Aluminum v. United Steelworkers of America,* No. 2:99–00728 (S.D.W.Va. Sept. 1, 1999).

2. *See Century Aluminum v. United Steelworkers of America,* No. 2:99–00728 (S.D.W.Va. Jan. 25, 2000). Century has not renewed its request for injunctive relief nor are there any allegations of continuing work stoppages or other labor disruption. As our Court of Ap-

peals recently held, "[a]n injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action." *Norfolk v. Bhd. of R.R. Signalmen,* 164 F.3d 847, 856 (4th Cir.1998) (quoting *Bloodgood v. Garraghty,* 783 F.2d 470, 475 (4th Cir.1986)). "An injunction 'will not be granted against something merely feared as liable to occur at some indefinite time in the future.'" *Id.* Accordingly, Century's request for injunctive relief is moot, although the Court stands ready to provide such relief once again, should circumstances require and after proper application is made.

law claims of civil conspiracy, assault, battery, intentional infliction of emotional distress, outrageous conduct, destruction of personal and corporate property, tortious interference, and subrogation. Defendants move to dismiss the Complaint for failure to exhaust contractual remedies. These motions have been fully briefed and are ripe for review.

## II. DISCUSSION

### A. Dismissal for Failure to Exhaust Contractual Remedies

■ Section 301 of the LMRA, 29 U.S.C. § 185, confers jurisdiction on the district court over suits by or against labor organizations to enforce the terms of a collective bargaining agreement. *See* 29 U.S.C. § 185(a). Century, the Local, and the International are parties to a collective bargaining agreement which requires, *inter alia*, that all controversies concerning its meaning or application should be resolved by adjustment through grievance procedures set forth in the contract and that, during the term of the agreement, "there shall be no lockouts, strikes, interruptions, or cessations of work." (International's Br. in Supp. of Mot. to Dismiss, Ex. A.) The issue here is a dispute over employee actions alleged to violate the no-strike provision of the collective bargaining agreement. The question of arbitrability is a matter of contract to be determined by the courts. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). However, where the collective bargaining agreement provides for mandatory arbitration of some or all of the issues in the dispute, exhaustion of the contractual remedies is normally required. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580

(1965); *see also Gateway Coal Co. v. UMW*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Doubts as to whether the dispute is arbitrable should be resolved in favor of arbitrability. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ The original Complaint asserts breach of contract claims against the International, the Local, and five named individuals, as well as "other unknown employees of Century Aluminum belonging to Local 5668." In *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), the Supreme Court held that Section 301(a) "does not sanction damage actions against individual employees for violating the no-strike provision of the collective-bargaining agreement, whether or not their union participated in or authorized the strike." *Reis*, 451 U.S. at 416, 101 S.Ct. 1836. Accordingly, to the extent Century asserts claims under Section 301 against individual employees, the Court finds and concludes those claims must be dismissed.[3]

■ The remaining Section 301 claim against the unions asserts a breach of the no-strike clause, failure by the International or the Local to halt the work stoppage and a request for resultant compensatory damages. Article 10, Adjustment of Grievances, of the parties collective bargaining agreement provides:

It is the intent and purpose of this Article, which shall be available to both the Union and the Company, to provide for the presentation and equitable adjustment of grievances. Except under the conditions set forth in this article (and in the case of the Union only after compli-

---

**3.** Plaintiff argues dismissing these claims allows individuals "to escape liability for their actions punishable under tort law by using 301 as a shield." (Pl.'s Resp. to Defs.' Mot. to Dismiss at 8.) These individuals do not necessarily escape liability. But claims against them are cognizable only under state tort law, not under federal labor law. To that extent, Section 301 does shield individual liability, a result with which the dissenting justices in *Reis* also disagreed to no avail. *See Reis*, 451 U.S. at 424, 101 S.Ct. 1836 (Burger, J., dissenting: "[T]he Court holds that individual workers, acting without union approval, are a special, privileged class who may with impunity violate an agreement voluntarily reached in arm's-length bargaining.").

ance with the International Constitution of the Union), there shall be no lockouts, strikes, interruptions, or cessations of work during the term of this Agreement. Should any differences arise between the Company and the Union as to the meaning or application of the provisions of this Agreement, or as to any question relating to the wages, hours of work, or other conditions of employment of any employee, the same shall be disposed of in accordance with the provisions of this Article.

(International's Br. in Supp. of Mot. to Dismiss, Ex. A.) The grievance procedure, which ends in binding arbitration, is available to the company as well as the union, to settle "any differences ... as to the meaning or application" of the agreement. *Id.*

█ Century asserts there was a strike by the unions, in violation of the no-strike clause; the unions deny that there was a strike and that the unions should or could have contained the alleged strike. The parties clearly differ as to the application of provisions of the agreement, a dispute which they have agreed to arbitrate. Further, it is well-settled that "an employer's damage claim for breach of a no-strike clause is subject to arbitration." *Pilot Freight Carriers, Inc. v. Int'l Bhd. of*

*Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 659 F.2d 1252, 1255 (4th Cir.1981) (citing *Drake Bakeries v. Bakery Workers,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).) Thus, both liability and damage portions of this civil action must proceed to arbitration, according to the parties' agreement.[4]

█ Before issuing the TRO, the Court assured itself of jurisdiction under *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). *See Century,* Sept. 1 Order, *supra* n. 1. Application for a *Boys Markets* injunction invokes the Court's jurisdiction on assertion the underlying dispute is arbitrable.[5] *See Boys Markets,* 398 U.S. at 254, 90 S.Ct. 1583; *Hardline Electric, Inc. v. Int'l Bhd. of Electrical Workers, Local 1547,* 680 F.2d 622, 626 (9th Cir.1982). The TRO ordered the parties, as required by the provisions of the 1999 collective bargaining agreement, to submit any grievance now existing between the parties to the grievance and arbitration procedure. On August 31, 1999 Century filed a grievance alleging:

On August 23 and 24, 1999, and continuing thereafter, the Union caused, participated in, condoned, encouraged and ratified a strike and the destruction of

---

4. Century does not dispute arbitrability of its claims, but argues instead that arbitration would deprive the company of due process of law, "otherwise available to it in this Court." (Resp. to Defs.' Mot. to Dismiss at 1.) It is axiomatic that constitutional due process protections "do not extend to private conduct abridging individual rights." *Davis v. Prudential Securities, Inc.,* 59 F.3d 1186, 1190 (11th Cir.1995) ("the state action element of a due process claim is absent in private arbitration cases") (quoting *Nat'l Collegiate Athletic Assoc. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)). "Only state action is subject to scrutiny under the Due Process Clause." *Id.* More important, Century is signatory to a voluntary collective bargaining agreement requiring arbitration, an agreement which forms the basis of its civil action and to which it seeks to hold Defendants.

Century also argues some of its damages were incurred by employees acting in con-

tempt of the TRO, which must, therefore, be interpreted by this Court. No motion for contempt has been filed, however, nor is there any material difference in the claims allegedly occurring after the TRO issued from those occurring before, which might render the former somehow inarbitrable.

5. *Boys Markets* provides a narrow exception to the Norris–LaGuardia Act's general prohibition against federal court injunctions of activities arising from labor disputes. *See Boys Markets,* 398 U.S. at 253, 90 S.Ct. 1583 ("Our holding in the present case is a narrow one."). Otherwise, *Boys Markets* does not extend federal jurisdiction beyond that provided in Section 301. As discussed above, breach of collective bargaining agreement claims must be arbitrated where the agreement so requires, and federal claims may not be brought before contractual remedies have been exhausted.

Company and employee's [sic] property. Further, the Union failed to take all reasonable and necessary steps to prevent a walkout or destruction of property from occurring and bring the walkout and destruction of property to an end. All of these acts and omissions [sic] violated the collective bargaining agreement (including without limitation Article 10(A) thereof[) ], causing substantial damages, which are now estimated to be in excess of $5,000,000. The filing of this grievance is without prejudice to the Company's right to pursue all legal remedies through the Courts.

For its remedy, the Company requests the arbitrator to hold: "The Union will pay Century Aluminum for all damages included [sic] but not limited to company Property, Employee's [sic] Property, loss of business, and other expenses." (International's Br. in Supp. of Mot. to Dismiss, Ex. B.) Apparently, the required arbitration process is under way. Century's original Complaint must be dismissed, and arbitration, already in progress, must be allowed to determine the outcome, as the parties voluntarily agreed.

### B. Amendment to Join State Claims

 Century urges the Court to assert supplemental jurisdiction over the numerous state claims asserted in the amended Complaint, pursuant to 28 U.S.C. § 1367. (See Resp. to Defs.' Mot. to Dismiss at 6.) District courts may decline to exercise supplemental jurisdiction over a claim forming part of the same case or controversy as the federal claims if the district court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). None of the frequently-cited factors of convenience and fairness to the parties, underlying issues of federal policy, comity, or judicial economy militates in favor of this Court hearing the numerous claims of state law violations arising from employees' alleged bad and tortious acts during the work stoppage. See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Having concluded that Plaintiff's Section 301 claims are subject to arbitration and that the parties have invoked the grievance procedure, the Court declines to exercise jurisdiction over the state claims and, accordingly, **DENIES** Plaintiff's motion to amend the Complaint to add them.

### III. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion to dismiss this action and **DISMISSES** it **WITHOUT PREJUDICE.** Plaintiff's motion to amend the Complaint is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.