Stanley Lorenzo WILLIAMS, Plaintiff,

v.

Ron STARLING, Marc Sharpe, and Fred Gregory, Defendants.

No. 1:02 CV 00014.

United States District Court, M.D. North Carolina.

Jan. 4, 2005.

Stanley Lorenzo Williams, Marion, NC, pro se.

David J. Adinolfi, II, Department of Justice, Raleigh, NC, Robert Eugene Cansler, Concord, NC, for Defendants.

## ORDER

BULLOCK, District Judge.

On October 4, 2004 Recommendation No. 3 of the United States Magistrate Judge was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. Thereafter, plaintiff filed objections to the Recommendation.

The Court has reviewed plaintiff's objections *de novo* and finds they do not change the substance of the United States Magistrate Judge's rulings which are affirmed and adopted.

**IT IS THEREFORE ORDERED** that defendants Gregory, Starling, and Sharpe's motion for summary judgment (docket no. 48) is granted, that plaintiff's motion for summary judgment (docket no. 64) is denied, that plaintiff's request for a ruling (docket no. 77) is denied for being moot, that this action is dismissed, and that finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is denied.

### RECOMMENDATION No. 3 OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

#### Facts

Plaintiff, a prisoner of the State of North Carolina, seeks relief under 42 U.S.C. § 1983. The pertinent facts, as reflected by the record, are as follows.

In 1997, plaintiff was indicted and accused of having sold cocaine. The investigation was conducted, at least in part, by Neil Stikeleather of the Concord Police Department. At the end of the investigation, the Police Department contacted North Carolina's State Bureau of Investigation and informed it that plaintiff had been in possession of 16 rocks of crack and

$758.00 in cash at the time of his arrest. Both the drugs and the cash were seized at the time of the arrest.

The State Bureau of Investigation transmitted this report to the Department of Revenue's Controlled Substance Tax Division. That entity determined that plaintiff owed $1,215.40 based on a controlled substance tax, penalty, and interest. It then issued an assessment against plaintiff in that amount and served it on plaintiff on June 30, 1997. Although plaintiff was notified that he had only 30 days to object to the assessment, he did not do so at that time. Based on the assessment, Fred Gregory, an enforcement officer for the Controlled Substances Division, served a garnishment on the Concord Police Department. The Police Department then delivered the $758.00 it had seized from plaintiff to Gregory on July 1, 1997. Gregory applied this money against the assessment.

Plaintiff states that in November of 1999, the charges that underlay the arrest in which the $758.00 was seized were dismissed. Over a year later, on January 22, 2001, Plaintiff wrote a letter to Ron Starling, the Director of the Controlled Substances Tax Division. The letter explained that the charges had been dismissed and requested that the $758.00 be returned and that the assessment be cancelled. Starling assigned Marc Sharpe, an enforcement officer, to look into the matter. Sharpe found that the charges were dismissed because plaintiff was already facing 38 years in prison on other convictions, not because the prosecuting attorney had concluded that he was innocent or that he did not have sufficient evidence to pursue the charge. For this reason, Sharpe and Starling concluded that no refund was necessary and notified plaintiff by letter dated February 15, 2001 that none would issue.

Based on the facts set out above, plaintiff filed this lawsuit against Stikeleather, Gregory, Starling, and Sharpe. He claims that the assessment and the subsequent failure to refund the money after charges were dismissed were improper. Plaintiff requested $500,000 in actual damages, greater than $10,000 in punitive damages, and an injunction against further enforcement of the assessment. This Court previously granted defendant Stikeleather's motion for summary judgment. Gregory, Starling, and Sharpe (hereinafter "defendants") now move for summary judgment themselves. Plaintiff has also made a motion for summary judgment and a motion that a ruling be rendered in the case.

### Summary Judgment Standard

When confronted with a motion for summary judgment by defendants, a plaintiff must make a sufficient showing with respect to each essential element of his case for which he bears a burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). He may not rely on mere allegations in his pleadings but must set forth specific facts within his personal knowledge. *Kipps v. Ewell*, 538 F.2d 564 (4th Cir.1976). This response must be specific and based on more than mere allegations of error or the falsity of defendants' affidavits. *Bloodgood v. Garraghty*, 783 F.2d 470 (4th Cir.1986). Plaintiff must show that there are issues of genuine material facts and he must produce evidence to support his contentions. A mere scintilla of evidence is not sufficient. Rather, there must be enough evidence for a jury to render a verdict in his favor. A few isolated disputed facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479 (4th Cir. 1989).

### Discussion
### Statute of Limitation

■ Defendants' first possible ground for dismissal is that the entire case is

barred by the applicable statute of limitations. Defendants believe that any harm which occurred to plaintiff occurred in 1997, at the time of the assessment. If correct, this would mean that the three-year statute of limitations expired in 2000 and that this case, which was not filed until 2002 would be easily time-barred. Plaintiff, on the other hand, believes that the three-year limit did not begin to run until 1999, when the criminal charges were dismissed. If correct, his suit would not be barred.

■ A statute of limitations argument was already raised by defendant Stikeleather in an unsuccessful motion to dismiss that preceded his successful motion for summary judgment. The undersigned issued a July 10, 2002 Recommendation rejecting the argument and that Recommendation was later adopted by an Order dated July 30, 2002. However, the motion was denied because the cause of action against defendant Stikeleather was based on his alleged unconstitutional seizure of the drugs upon which a criminal conviction could have been based pursuant to an *indictment*. In that instance, the statute of limitations runs from the dismissal of the indictment. *See* July 10, 2002 Recommendation. The Recommendation noted that a cause of action based on an alleged illegal tax assessment would be different. This is because plaintiff could challenge an alleged illegal tax assessment whether he was convicted or not. The decision of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), would not apply. The assessment was based on plaintiff's possession of certain drugs, not on criminal conduct. In fact, plaintiff had thirty days to challenge the assessment and did not. He has waived or defaulted his right to challenge the assessment. *Crowder v. United States*, 874 F.Supp. 700, 704

(M.D.N.C.1994). For the instant cause of action, the assessment was made in 1997 and plaintiff did not file his action until 2002, well beyond the three-year limitation period.

While defendants Starling and Sharp took alleged action after 1997, as will be seen, such action did not implicate any of plaintiff's constitutional rights. The statute of limitations bars the action against defendant Gregory.

### Official Capacity Claims

■ Defendants are also entitled to summary judgment for other reasons. The first is that, at least as to any official capacity claims, plaintiff is not entitled to any of the relief he requests.[1] Plaintiff primarily requests money damages. However, as the Fourth Circuit has explained in another case dealing with North Carolina's drug tax, the Eleventh Amendment bars the awarding of damages against an officer of the State because it is the State that will have to pay the money from its treasury. *See Lynn v. West*, 134 F.3d 582 (4th Cir.1998), *cert. denied*, 525 U.S. 813, 119 S.Ct. 47, 142 L.Ed.2d 36 (1998), *citing, Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605 (1993). For this reason, this Court cannot award plaintiff the damages he requests on any official capacity claims.

■ The Eleventh Amendment does not preclude plaintiff from receiving prospective relief, i.e. an injunction barring further enforcement of the assessment. However, *Lynn* also addresses this issue in a way that is not favorable for plaintiff. In *Lynn*, one of the plaintiffs faced criminal drug charges and a sizeable civil assessment based on North Carolina's drug tax. Some of that plaintiff's property was

---

**1.** It is not clear whether plaintiff is suing defendants in their individual capacities, official capacities, or both. For this reason, the Court will address both

seized and sold and a portion of the assessment was paid. The plaintiffs, who all held interests in the seized property, then sued challenging the constitutionality of the drug tax statutes, requesting damages, and seeking an injunction against further enforcement of the assessment. *Id.* at 584–585. The Fourth Circuit did hold that the application of North Carolina's drug tax in *Lynn* was unconstitutional, but it also held that, as previously discussed, the Eleventh Amendment barred the request for damages. It further found that an injunction was not proper because there was no sign that North Carolina was continuing to seek to satisfy the assessment or that it would do so in the future. *Id.* at 595.

The Court finds that the ruling in *Lynn* regarding injunctions also covers the present case. While it is true that a portion of the assessment against plaintiff remains unmet and that the assessment has never, so far as the record indicates, been canceled, there is also no pending proceeding to enforce the assessment. Nor is there any sign that the State of North Carolina will seek to enforce the assessment in the future. The Fourth Circuit's holding in *Lynn* regarding the constitutionality of drug tax assessments during the time period involved and the fact that plaintiff will be incarcerated for an extended period of time make future enforcement an extremely remote possibility.[2] For this reason, plaintiff is not entitled to any injunctive relief. Because he cannot receive any of the relief he seeks on his official capacity claims, these claims should be dismissed.

### Individual Capacity Claims

■■ Having found that plaintiff is entitled to no relief on his official capacity claims, the Court will now consider his individual capacity claims. Defendants' primary argument here is that they are all entitled to qualified immunity. Qualified immunity prevents recovery of damages from government officials performing discretionary functions and remains in place as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know of. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order for a right to be clearly established, "the contours of that right must be sufficiently clear that a reasonable official would understand that the official's conduct violates that right." *Beeson v. Johnson,* 894 F.2d 401, 1990 WL 2330 (4th Cir.1990) (unpublished), *citing Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ Here, defendant Gregory was the person responsible for the original assessment that issued in June of 1997 and was partially satisfied in July of 1997. There is no evidence that Gregory had any involvement with the assessment beyond July of 1997. At the time of the assessment, *Lynn* had not yet been decided. Not only this, but the North Carolina courts had upheld the drug tax prior to Gregory's assessment. *See State v. Ballenger,* 123 N.C.App. 179, 184, 472 S.E.2d 572, 575 (1996), *aff'd* 345 N.C. 626, 481 S.E.2d 84, *cert. denied,* 522 U.S. 817, 118 S.Ct. 68, 139 L.Ed.2d 29 (1997). Based on these facts, it cannot be said that it would have been

---

**2.** North Carolina amended its drug tax laws following *Lynn.* However, the Court notes that it appears that plaintiff was taxed under a version of the statute that was the same or substantially similar to the version that was used to make the assessment in *Lynn.* Still, because it is not necessary to decide the issue in order to decide the motion before it, the Court does not definitively find that the assessment against plaintiff was unconstitutional based on *Lynn.*

clear to a reasonable person in Gregory's shoes that his action in issuing the assessment would even possibly have violated plaintiff's rights. For this reason, Gregory is entitled to qualified immunity and his motion for summary judgment should be granted.

■ Starling and Sharpe's involvement with the assessment is different. There is no evidence showing that they played any part in the assessment and garnishment in 1997. In fact, there is no evidence that they dealt with plaintiff's case at all until 2001, when plaintiff first requested that the seized money be refunded and that the assessment be cancelled. Of course, by this time *Lynn* had been decided. However, assuming for the sake of argument that the original assessment would be found invalid under the rule in *Lynn,* Starling and Sharpe were not making an original assessment. Any unconstitutional action surrounding this issuance of the assessment, if any occurred, occurred in 1997. Starling and Sharpe played no part in it. This alone could be grounds to grant their summary judgment motion.

Not only did Starling and Sharpe not play a role in assessing plaintiff's money, but, when they did become involved with plaintiff's case, they apparently did so only gratuitously. Plaintiff failed to take advantage of the only procedural remedy he was offered by North Carolina in 1997. When he sent his letter to Starling in 2001, there was, so far as the record reflects, no statute or rule compelling Starling and Sharpe to act at all, much less compelling them to act in any certain way. Still, apparently in the interests of fairness, they did look into plaintiff's allegation that the assessment should be cancelled because his criminal charges had been dismissed. They concluded that the factual support for the assessment still remained.

Therefore, they allowed the assessment to stand.

As for any issues connected to *Lynn,* by the time Starling and Sharpe looked at the case, they would have been viewing it in much the same manner as this Court does now, and so would have understandably reached a similar conclusion that there was nothing further that the law required the State of North Carolina to do in the matter. Certainly, it cannot be said that a reasonable person in Starling and Sharpe's position would have been aware that their failure to take action in the case would somehow be an independent violation of plaintiff's constitutional rights. Plaintiff has no cause of action against them and they are also entitled to qualified immunity. Their motion for summary judgment should be granted. Because the Court recommends that all claims against all remaining defendants should be dismissed, plaintiff's motion for summary judgment should be denied and his motion for a ruling should be denied for being moot.

**IT IS THEREFORE RECOMMENDED** that defendants Gregory, Starling, and Sharpe's motion for summary judgment (docket no. 48) be granted, that plaintiff's motion for summary judgment (docket no. 64) be denied, that plaintiff's request for a ruling (docket no. 77) be denied for being moot, and that Judgment be entered dismissing this action.