GREGORY, Circuit Judge,
dissenting:
The Court adheres today to a rigidly formalistic view of the Due Process Clause that provides no real protection for the well-established liberty interest Virginia inmates have in parole consideration. For this reason, I respectfully dissent.
I.
The majority and I are in agreement on several points. There is no independent due process right to parole, e.g., Greenholtz v. Inmates of the Neb. Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), nor is there one in being considered for parole, Hill v. Jackson, 64 F.3d 163 (4th Cir.1995). However, a State can create such a liberty interest, id. at 170, and Virginia has done so here, vesting in its inmates a right to parole consideration through the passage of its parole statute, id. Finally, the Due Process Clause requires that the parole board (“the Board”) furnish an inmate with a written explanation for its denial of parole. E.g., Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir.1986); Franklin v. Shields, 569 F.2d 784, 800 (4th Cir.1978) (en banc).
The majority and I part ways on the question of whether the Due Process Clause provides any additional protections to inmates, like the Appellants, who have a liberty interest in parole consideration. While a hyper-literal interpretation of this Court’s precedent might suggest that nothing beyond a written explanation is required,[1] we have never before held this to be the case,[2] and we should not do so today.
While the majority cites to Franklin v. Shields, Bloodgood v. Garraghty, and Vann v. Angelone for the proposition that the Board need only furnish a written explanation for denial, these cases contemplated the Board doing more than applying one factor to every case it hears. In Bloodgood we held that we “will not assume that the Board relied on possibly *187 invalid factors” in making its decisions. Bloodgood, 783 F.2d at 475. This of course presupposes that there are invalid factors — that the Due Process Clause requires not just a written explanation for the denial, but that the denial be based on valid factors. In Vann, we recognized that parole consideration consists of more than the rote application of a single factor: “Most parole decisions involve a considerable degree of discretion. Hence, parole authorities must investigate and weigh numerous factors including [the inmate’s] history, mental and physical condition, attitude, and compatibility with the ‘interests of society.’ ” Vann v. Angelone, 73 F.3d 519 (4th Cir.1996) (quoting Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir.1991)). Similarly, in Bloodgood we said, “The board’s inquiry is not the legal foundation of some past conviction, but a prediction of a prisoner’s prospects for a law-abiding life.” Bloodgood, 783 F.2d at 473 (citing Franklin, 569 F.2d at 800). Thus we have implied that the Board must consider at least some factors beyond the nature of the offense.
I emphasize the distinction between the question of whether a factor is valid and whether it is sufficient. The nature and circumstances of the underlying offense is indisputably a legitimate factor that may be considered, but it is not enough standing alone. The Due Process Clause requires that the Board consider additional factors as well. Whether the Due Process Clause requires that specific additional factors be considered, it is enough here to note that the Board and the State of Virginia have substantial discretion in determining how it will weigh the factors in making the final decision whether to grant parole. But to hold that the rote use of the nature of the underlying offense by itself is sufficient transmogrifies the parole process into an empty formality.
II.
The Appellants’ complaint alleges facts that render plausible the inference that the Board only considers the nature and circumstances of the crime in deciding whether to grant or deny them parole. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Appellants allege that after Virginia’s General Assembly abolished parole for all newly incarcerated inmates in 1995, the Board instituted a number of changes to its procedures. Prior to 1995, the Board used a risk assessment tool in making parole determinations; but after the abolition of parole the Board discontinued use of the tool. J.A. 21. The Board has also abandoned its practice of conducting face-to-face interviews with parole-eligible inmates. J.A. 23. It has similarly discouraged wardens, guards, and other prison officials from providing it with information about eligible inmates, J.A. 23, and has decreased the frequency with which inmates’ families appear before it, J.A. 24. The Board no longer meets in person regularly, but instead circulates electronic files and has its members cast votes to grant or deny parole electronically. J.A. 23-24. Virginia law requires the Board to establish rules to govern parole procedure. VA CODE § 53.1-136.1. While these used to be published in the Virginia Administrative Code, 14 Va. Reg. No. 17 at 2457 (Apr. 22, 1998), in 1998 the Board repealed those policies and has not replaced them; instead, it has adopted an informal “policy manual.” J.A. 22. Perhaps most tellingly, the policy manual lists fourteen factors the Board is to consider in determining whether to grant parole, with rehabilitative concerns featuring prominently among them. J.A. 22. Nevertheless, the Appellants were denied parole in the vast majority of cases for one and only one reason — the *188 nature and circumstances of the underlying offense. J.A. 22.[3] The majority asserts that the Appellants have offered “only speculation in support of [their] view” that they are not being considered for parole. Maj. op. at 182-83. However, these significant procedural changes, taken together, strongly suggest the Board has systematically eliminated the procedures that would have furnished it with information beyond the nature and circumstances of the underlying offense. These allegations are sufficient to surmount the relatively low burden of surviving a 12(b)(6) motion to dismiss.
It is true that on rare occasions the Board gave a reason other than the nature and circumstances of the offense in denying some of the Appellants parole. But for each Appellant, the Board has relied on the nature and circumstances of the offense, and no other factor, on at least one occasion. Thus, assuming there is a constitutional violation when the Board fails to consider any other reason, see supra Part II, each Appellant has suffered a constitutional injury on multiple occasions.
III.
“Fundamental fairness [is] the touchstone of due process.” Gagnon v. Scarpelli 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In my view, fundamental fairness in the parole context requires at a minimum that the Board consider at least one factor beyond the nature of the underlying offense. The facts in the Appellants’ complaint make out a plausible claim that the Board has failed to comply with this requirement. As such, I would vacate the district court’s 12(b)(6) dismissal and remand for further proceedings.

. In Strader v. Troy, 571 F.2d 1263, 1266 (4th Cir.1978), we held that the Board may not consider previous convictions if they were obtained in violation of the inmate's right to counsel. While there the Sixth Amendment operated as an independent constraint on the Board, Strader nevertheless demonstrates that the Constitution imposes additional requirements beyond a written explanation.

. For example, Sharon Burnette has been denied parole 12 times, and the sole reason given on each occasion was the “serious nature and circumstances of the crime” or words to that effect. J.A. 30-31. Edward Conquest has been denied parole 22 times, all for the same reason. J.A. 32.